## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FACEBOOK, INC.; INSTAGRAM, LLC; and WHATSAPP LLC, | : : : | |
| Plaintiffs, | : : | |
| | : | Civil Action No. _____ |
| v. | : : | |
| NEW VENTURES SERVICES, CORP., and DOES 1–10, | : : : | |
| | : | Jury Trial Demanded |
| Defendants. | : | |

## **COMPLAINT**

Plaintiffs Facebook, Inc. ("Facebook"), Instagram, LLC ("Instagram"), and WhatsApp LLC ("WhatsApp") (collectively "Plaintiffs") by and through their attorneys, Perkins Coie LLP and Royer Cooper Cohen Braunfeld LLC, file their complaint for injunctive relief and damages against Defendant New Ventures Services, Corp., which is the registrant of at least 74 domain names that infringe Plaintiffs' trademarks; and Does 1–10, who are acting in concert with, as the agents of, and/or as the alter egos of New Ventures Services, Corp. (collectively, "NVSC").

## I.      INTRODUCTION

1.      Facebook, Instagram, and WhatsApp are among the most recognizable brands on the Internet and in the world.  Seeking to take advantage of Plaintiffs' goodwill and fame, and unwary Internet users, NVSC has registered at

1

least 278 domain names that are identical or confusingly similar to Plaintiffs'
trademarks, including, for example, httpinstagram.com, instagram-login.com, and
hackearwhatsapp.com.  As of March 29, 2021, NVSC owned at least 74 of these
identical or confusingly similar domain names (these domain names currently
registered by NVSC are referred to collectively as the "Infringing Domain
Names").  As reported by domain name news sources, the ICANN-accredited
registrars Network Solutions, LLC and Register.com, Inc. cherry-picked many of
the Infringing Domain Names prior to the registrations expiring and then
transferred the Infringing Domain Names to NVSC—a related entity—before the
Infringing Domain Names became publicly-available for registration.  On
information and belief, NVSC now uses most of the Infringing Domain Names to
trick unsuspecting Internet users into visiting the websites at the Infringing Domain
Names (the "Associated Websites").

  2.  NVSC then monetizes the Infringing Domain Names by exploiting the
mistakes of Internet users who believe they are navigating to Plaintiffs' authorized
online websites.  The majority of the Associated Websites are "pay-per-click"
websites from which NVSC generates revenue from Internet traffic.  Some of the
Associated Websites have also been flagged for suspected phishing and other
nefarious website activities.  In addition, NVSC profits from the notoriety of
Plaintiffs' trademarks on which the Infringing Domain Names are based by

offering to sell these Infringing Domain Names, and, on information and belief, often soliciting the former registrants of the Infringing Domain Names to pay extortionate prices to buy back the Infringing Domain Names. In many instances, NVSC directs consumers interested in purchasing these Infringing Domain Names to the Network Solutions, LLC website.

3.      This illicit business model is nothing new to NVSC, which has a long and well-documented history of working in active concert with related entities in order to profit in bad faith from the registration, trafficking in, and use of trademark-based domain names. These related entities include registrars Network Solutions, LLC and Register.com, Inc., and the proxy service provider Perfect Privacy, LLC, all of which are subsidiaries of Web.com Group, Inc.

4.      Plaintiffs bring this lawsuit to stop NVSC's unlawful activity and recover for the harm done to Plaintiffs and their trademarks.

## II.      THE PARTIES

5.      Plaintiff Facebook, Inc. is a Delaware corporation with its principal place of business in Menlo Park, California.

6.      Plaintiff Instagram, LLC is a Delaware limited liability company with its principal place of business in Menlo Park, California.

7.      Plaintiff WhatsApp LLC is a Delaware limited liability company with its principal place of business in Menlo Park, California.

8.      Defendant New Ventures Services, Corp. is a British Virgin Islands corporation using a Post Office box in Drums, Pennsylvania, United States for all but one of the Infringing Domain Names, and that one lists Pennsylvania as the Registrant State without specifying a city.  According to Web.com Group, Inc.'s ("Web.com") 2017 SEC Form 10-K Exhibit 21.1, NVSC was and/or is a subsidiary of Web.com.  Web.com is a web technology company servicing millions of customers worldwide through its portfolio of brands, including the ICANN-accredited registrars Network Solutions, LLC ("Network Solutions") and Register.com, Inc. ("Register.com"), the domain name registration and aftermarket service provider SnapNames, and the domain name registration proxy service provider Perfect Privacy, LLC ("Perfect Privacy").  In February 2021, Web.com was acquired by and/or merged into a newly-formed entity called Newfold Digital, which is apparently being led by the former CEO and CFO of Web.com, among other members of the Web.com leadership team.  Both Web.com and Network Solutions have offices at 10 Azalea Rd., Drums, Pennsylvania, 18222-2154.

9.      On information and belief, Defendant Does 1–10 are individuals and/or entities residing in the United States working in concert with, as the agents of, and/or as the alter egos of NVSC to register, traffic in, and use the Infringing Domain Names with a bad faith intent to profit ("Related Entity Does").

## III.   JURISDICTION AND VENUE

10.    The Court has jurisdiction over the federal causes of action alleged in this complaint pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 15 U.S.C. § 1121(a).

11.    The Court has personal jurisdiction over NVSC because NVSC has consented to personal jurisdiction in this District and because a substantial part of the activities giving rise to this complaint occurred in and arise from an address in this District.

12.    Under the ICANN 2013 Registrar Accreditation Agreement, domain registrars are required to enter into contracts with domain registrants, which contracts include a forum-selection clause "[f]or adjudication of disputes concerning or arising from use of the [domain name]" consenting "to the jurisdiction of the courts of the [registrant]'s domicile."

13.    The ICANN 2013 Registrar Accreditation Agreement further requires that registrars' contracts with domain registrants include provisions requiring the registrant to provide "accurate and reliable contact details" including the "postal address . . . of the [registrant]."

14.    Each of the sponsoring registrars for the Infringing Domain Names is a signatory to the ICANN 2013 Registrar Accreditation Agreement.

15.     Network Solutions, Register.com, eNom, Inc., and SnapNames are each a sponsoring registrar for at least one Infringing Domain Name.  The publicly-available registration agreements for these four registrars include the required forum-selection and contact information clauses noted above.  On information and belief, NVSC's registration agreements with these four registrars include the required forum-selection and contact information clauses noted above.

16.     On information and belief, all other sponsoring registrars' contracts with NVSC for each of the Infringing Domain Names include the required forum-selection and contact information clauses noted above.

17.     NVSC uses a Post Office box in Drums, Pennsylvania, United States for all but one of the Infringing Domain Names, and that one lists Pennsylvania as the Registrant State without specifying a city.

18.     NVSC has used the same Post Office box in Drums, Pennsylvania as its registration address with respect to more than 222,000 domain name registrations.  NVSC has continuously used this Post Office box in Drums, Pennsylvania in connection with domain name registrations since at least 2013.

19.     Venue is proper in this action pursuant to 28 U.S.C. §§ 1391(b)(2) and/or 1391(b)(3), because NVSC uses a Post Office box in Drums, Pennsylvania, United States for all but one of the Infringing Domain Names, and this Court has personal jurisdiction over NVSC.

## IV.    FACTS

**A.    Plaintiffs and their Trademarks**

**1.    Facebook**

20.    Amongst other products and services, Facebook offers a social networking website and mobile application that enables its users to create their own personal profiles and connect with each other on their personal computers and mobile devices.

21.    Facebook owns the exclusive rights to numerous trademarks and service marks to provide its online services, including the distinctive FACEBOOK word mark and stylized mark, and has used the marks in connection with its services since at least as early as 2004.

22.    In addition to its extensive common law rights, Facebook owns numerous United States registrations for its FACEBOOK marks, including but not limited to:

      a.    United States Registration Number 3,734,637; and

      b.    United States Registration Number 3,881,770.

Copies of these registration certificates are attached to this complaint as Exhibit 1. Facebook's common law and registered FACEBOOK trademarks are collectively referred to as the "Facebook Trademarks."

23.     Facebook's use of the Facebook Trademarks in interstate commerce has been extensive, continuous, and substantially exclusive.  Facebook has made, and continues to make, a substantial investment of time, effort, and expense in the promotion of Facebook and the Facebook Trademarks.  As a result of Facebook's efforts and use, the Facebook Trademarks are famous (and have been famous since at least as early as 2011) as they are recognized within the United States and around the world as signifying high quality, authentic goods and services provided by Facebook.

**2.     Instagram**

24.     Instagram offers a photo and video sharing and editing service, mobile application, and social network.  Instagram users can choose to share their photos and videos with their followers online.

25.     Instagram owns the exclusive rights to the distinctive INSTAGRAM word mark and stylized mark, having used the marks in connection with its goods and services since at least as early as 2010.

26.     In addition to its extensive common law rights, Instagram owns numerous United States registrations for the INSTAGRAM marks, including, but not limited to:

    a.     United States Registration Number 4,795,634;

    b.     United States Registration Number 4,146,057;

c.     United States Registration Number 4,756,754;

d.     United States Registration Number 5,566,030;

e.     United States Registration Number 4,856,047;

f.     United States Registration Number 4,822,600;

g.     United States Registration Number 4,827,509;

h.     United States Registration Number 4,863,595

i.     United States Registration Number 4,863,594;

j.     United States Registration Number 5,019,151; and

k.     United States Registration Number 5,869,731.

Copies of these registration certificates are attached to this complaint as Exhibit 2. Instagram's common law and registered INSTAGRAM trademarks are collectively referred to as the "Instagram Trademarks."

27.     Instagram's use of the Instagram Trademarks in interstate commerce has been extensive, continuous, and substantially exclusive.  Instagram has made, and continues to make, a substantial investment of time, effort, and expense in the promotion of Instagram and the Instagram Trademarks.  As a result of Instagram's efforts and use, the Instagram Trademarks are famous (and have been famous since at least as early as 2014) as they are recognized within the United States and around the world as signifying high quality, authentic goods and services provided by Instagram.

### 3.    WhatsApp

28.    WhatsApp offers simple, secure, reliable messaging and calling, provided for mobile devices globally and through desktop computers.  WhatsApp users may access WhatsApp's services via app stores or its website located at <whatsapp.com>.

29.    WhatsApp owns the exclusive rights to several trademarks and service marks, including the distinctive WHATSAPP word mark, having used the mark in connection with its goods and services since at least as early as 2009.

30.    In addition to its extensive common law rights, WhatsApp owns numerous United States registrations for the WHATSAPP marks, including, but not limited to:

    a.    United States Registration Number 3,939,463;

    b.    United States Registration Number 4,083,272;

    c.    United States Registration Number 5,492,738; and

    d.    United States Registration Number 5,520,108.

31.    Copies of these registration certificates are attached to this complaint as Exhibit 3.  WhatsApp's common law and registered WHATSAPP trademarks are collectively referred to as the "WhatsApp Trademarks."

32.    WhatsApp's use of the WhatsApp Trademarks in interstate commerce has been extensive, continuous, and substantially exclusive.  WhatsApp has made,

and continues to make, a substantial investment of time, effort, and expense in the promotion of WhatsApp and the WhatsApp Trademarks.  As a result of WhatsApp's efforts and use, the WhatsApp Trademarks are inextricably linked with the products and services offered by WhatsApp.

33.     The Facebook Trademarks, Instagram Trademarks, and WhatsApp Trademarks are collectively referred to as the "Plaintiffs' Trademarks."

**B.     NVSC's Unlawful Activities**

**1.     NVSC's Business Practices and Partners**

34.     On information and belief, NVSC is a subsidiary of Web.com, which owns, among other internet brands, (a) Network Solutions and Register.com, both ICANN-accredited registrars, (b) SnapNames, which offers various domain name registration and aftermarket services, and (c) Perfect Privacy, a domain name registration proxy service.  On information and belief, NVSC's only business is registering unexpired or expired domain names, generating pay-per-click revenue from websites it posts associated with those domain names, and generating additional revenue by selling those domain names for financial gain.  Many of the domain names that NVSC registers, traffics in, and/or uses incorporate trademarks or confusingly similar variations of trademarks owned by third parties, such as Plaintiffs.

35.     On information and belief, in connection with its registration, trafficking, and use of such domain names, and its hosting of websites in connection with those domain names, NVSC works in active concert with other subsidiaries of Web.com, including without limitation Network Solutions, Register.com, SnapNames, and Perfect Privacy.

36.     For example, in a June 2019 article titled *New Ventures Services: #Domain warehousing and the risk of getting served with a #UDRP*, the publication DomainGang describes NVSC as the "domain warehousing sister company" of Network Solutions, both of which it describes as "entities under the Web.com umbrella."  A screenshot of this article is attached to this complaint as Exhibit 4.

37.     Also, for many years, domain name consumers have complained about the business practices of NVSC and the Web.com-affiliated registrars with which NVSC works in active concert, including but not limited to:

      a.     A sitepoint.com bulletin board post titled *New Venture Services, Corp & Network Solutions?* highlights numerous consumer complaints about NVSC and its business practices dating back to 2007.  A screenshot of this bulletin board is attached to this complaint as Exhibit 5.

b.  Similarly, a July 2014 report titled *WARNING! If You Own Domain Names, Avoid Web.com and Its Subsidiaries and Partners (Register.com Network Solutions, and New Ventures Services - A.K.A. "New Vultures Services" - Among Others)* catalogued a long history of complaints related to NVSC's business practices, particularly its relationship with related-registrars Network Solutions and Register.com and its business of "park[ing the domain names] for ad revenue [and, w]hen queried by former registrants, [] offer[ing] to sell them back (at extortionate prices) or auction[] them off on the aftermarket." A screenshot of this report is attached to this complaint as Exhibit 6.

c.  An August 2014 article from dotWeekly titled *New Ventures Services Corp, Who Are They?*, reported that Network Solutions and Register.com "cherry pick[ed] expired domains [such that] the general public is not allowed to bid in an open auction to obtain the domain," by transferring the cherry-picked domain names to NVSC for re-sale.  A screenshot of this article is attached to this complaint as Exhibit 7.

d.    In September 2015, TheDomains.com reported that an
      unexpired domain name had been moved from a registrant's
      Network Solutions account to privacy protection, then
      registered to NVSC, and then auctioned for sale for $36,100.  A
      screenshot of this report is attached to this complaint as Exhibit
      8.

e.    In a follow up article from December 2016 on dotWeekly titled
      *Network Solutions Takes Customers Valid Domain, Holds It*
      *Hostage*, the publication reported that the "expired domains
      always fit a pattern.  Expire, go under privacy, come out and
      appear in whois as New Ventures Services Corp."  This article
      documents in detail a situation in which Network Solutions had
      wrongly transferred an unexpired domain name to NVSC,
      which then demanded payment from the rightful registrant for
      its return.  A screenshot of this article is attached to this
      complaint as Exhibit 9.

f.    In December 2017, on a NamePros.com post titled *Network*
      *Solutions - New Ventures Services Corp Stole My Domain*, a
      domain name registrant reported that NVSC had demanded
      $8,000 to return an unexpired domain name registration that

Network Solutions had transferred to NVSC, even though the registrant had paid for a lengthy registration period.  The registrant had originally paid $13,500 for the domain.  A screenshot of this report is attached to this complaint as Exhibit 10.

g.    In February 2018, again on NamePros.com in a post titled *I bought DomainNames.com from NetworkSolutions, but they took it back*, another domain name registrant reported that Network Solutions and NVSC had colluded to deprive him of the registration of a properly-purchased domain name.  A screenshot of this report is attached to this complaint as Exhibit 11.

38.    On information and belief, NVSC and Web.com are closely connected.  NVSC shares or shared many of Web.com's customer-facing resources, including: (a) NVSC's website contains a link to Web.com's help page and (b) phone numbers connected to NVSC lead to an automated message directing callers to Web.com's help page.

39.    In addition, Web.com's in-house legal counsel has represented NVSC in multiple legal proceedings, including (a) at least two Uniform Domain-Name

Dispute-Resolution Policy[1] ("UDRP") cases in which NVSC was ordered to transfer domain names that infringed third parties' trademark rights and (b) a cybersquatting and trademark infringement lawsuit in federal district court in which Web.com and NVSC were both named as defendants, *Showa Glove, Co. v. Web.com Group, Inc., et al.*, No. 3:18-cv-00383-TJC-JBT (M.D. Fla.).

40.     As a consequence of its business of registering, trafficking in, and using trademark-based domain names, working closely with Web.com and affiliated subsidiaries, NVSC has been found to have violated the UDRP by registering and using domain names that violate a third party's trademark rights with a bad faith intent to profit.  In each of more than 30 published decisions, a UDRP arbitration panel ordered domain names to be transferred from NVSC to the rightful third-party trademark owner.

**2.     NVSC <u>Registers</u> Infringing Domain Names with a Bad Faith Intent to Profit**

41.     As of March 29, 2021, NVSC registered, trafficked in, and/or used at least the following 74 Infringing Domain Names that are identical or confusingly similar to Plaintiffs' Trademarks:

| Domain Names that Infringe the Facebook Trademarks | |
|---|---|
| facebookbusinessleads.com | faceebbok.com |

---

[1] The UDRP is an arbitration procedure mandated by the registration agreements for many top level domains.

| | |
|---|---|
| facebbock.com | faceeboock.com |
| facebooc.net | fbooki.com |
| facebooked.net | hcvfacebook.com |
| facebppook.com | krzfacebook.com |
| facedebook.com | winkactionphoto-facebook.com |

| Domain Names that Infringe the Instagram Trademarks | |
|---|---|
| hacksdoinsta.com | instagram-money-maker.com |
| instagrambypass.com | instagrammonster.com |
| helps-instagram.com | instagram-online.com |
| instagram-login.com | instagrampawrentspalooza.com |
| 9instagram.com | instagramphotography.com |
| captionsforinsta.com | instagramservers.com |
| ezinstafollowers.com | instagramsor.com |
| httpinstagram.com | instagramtag.com |
| instafollowers.info | instagramtakipcikazan.net |
| instafollower98.com | instagramtweet.com |
| instafollowerhits.com | legal-instagram.com |
| instafollowerlikes.com | mafiainstagram.com |
| instagram-bio.com | miinstagram.com |

| | |
|---|---|
| instagram-computer.com | plusinstagram.com |
| instagramedu.com | popinstagram.com |
| instagramforinsurance.com | reportinstagram.com |
| instagramhammer.com | real-insta-followers.com |
| instagramhd.com | robotinstagram.com |
| instagramhelping.com | taginstagram.com |
| instagramheroes.com | the-instagram.com |
| instagramhub.com | unblockinstagram.com |

| Domain Names that Infringe the WhatsApp Trademarks | |
|---|---|
| hackearwhatsapp.com | whatsappin.com |
| installwhatsapps.com | whatsappinternet.com |
| whatsapp-help.com | whatsappmax.com |
| hawhatsapp.com | whatsapppromotion.com |
| multi-whatsapp.com | whatsappsecrets.com |
| whatsap-beta.com | whatsappsms.com |
| whatsapp8.com | whatsappsoft.com |
| whatsappforpc.com | whatsapp-tools.com |
| whatsapphouse.com | world-whatsapp.com |
| whatsappid.com | yoyowhatsapp.com |

42.     Plaintiffs' Trademarks were famous or distinctive when NVSC registered the Infringing Domain Names.

43.     The Infringing Domain Names either incorporate Plaintiffs' Trademarks or are confusingly similar misspellings of Plaintiffs' Trademarks.  For example, facebooked.net, instagrambypass.com, and hackearwhatsapp.com all incorporate identical versions of one of Plaintiffs' Trademarks and facebooc.net is a common and confusingly similar typographical misspelling of the Facebook Trademarks.

44.     In addition, many of the Infringing Domain Names use one of Plaintiffs' Trademarks (or a confusingly similar variation thereof) juxtaposed to a generic term commonly used in connection with the goods and/or services associated with Plaintiffs' businesses, such as winkaction**photo**-facebook.com, instagram-**login**.com, and **install**whatsapps.com.  Other Infringing Domain Names also use Plaintiffs' Trademarks with other non-differentiators such as articles (e.g., **the**-instagram.com) or basic terms (e.g., whatsapp-**tools**.com).

45.     For all Infringing Domain Names, NVSC is listed as the registrant organization, and all but one of the Infringing Domain Names list a Post Office box located in Drums, Pennsylvania, United States.  A copy of WHOIS data for each of the Infringing Domain Names is attached to this complaint as Exhibit 12.

**3.     NVSC <u>Traffics in</u> Infringing Domain Names with a Bad Faith Intent to Profit**

46.     NVSC also traffics in the Infringing Domain Names by offering 67 of the 74 Infringing Domain Names for sale.

47.     Some of the Infringing Domain Names' WHOIS data lists the "Registrant Name," "Admin Name," and/or "Tech Name" as "THIS DOMAIN MAY BE FOR SALE AT HTTPS://WWW.NETWORKSOLUTIONS.COM." Network Solutions is also often listed as the sponsoring registrar for the Infringing Domain Names.  Again, for all Infringing Domain Names, NVSC is listed as the registrant organization.

48.     On information and belief, Network Solutions facilitates and collects payments related to the sale of domain names by NVSC, including by providing customer support services.  Network Solutions customer support personnel have represented to consumers that NVSC and Network Solutions are related companies.

49.     Many of the Associated Websites state that the particular Infringing Domain Name "may be for sale," and that the Internet user can click on a link to inquire further.  For example, as shown below, the Associated Website for the Infringing Domain Name whatsappid.com had a yellow banner across the top

stating "The domain whatsappid.com may be for sale":



50.     If an Internet user clicks on the link in the banner at the top of the
Associated Website for the Infringing Domain Name whatsappid.com, a Network
Solutions landing page appears stating that the Infringing Domain Name
whatsappid.com is not available, but offering to sell other domain names that
incorporate Plaintiffs' Trademarks or confusingly similar variations thereon.



51.     Some of the Infringing Domain Names resolve to Associated
Websites that explicitly state that the Internet user can "Buy this domain."  For
example, as shown below, the Associated Website for the Infringing Domain
Name facebppook.com had an orange banner across the top stating "Buy this
domain":



52.     If an Internet user clicks on the link in the banner at the top of the Associated Website for the Infringing Domain Name facebppook.com, a Network Solutions landing page appears offering to sell the Infringing Domain Name facebppook.com for $300.



53.     NVSC's website, using the domain name newvcorp.com, featured an online form to contact NVSC, pictured below:



54.     Consistent with NVSC's business of registering domain names recently registered by third parties, the NVSC form asks whether the individual filling out the form is the "previous[]" owner of the domain.  Consistent with NVSC's business of selling trademark-based domain names for profit, the form also states that, "with regards to one or more of our premium domains . . . [w]e [NVSC] will review offers of $500 USD or more," which is far more than the cost of the registration.  A screenshot of this form is also attached to this complaint as Exhibit 13.

55.     The domain name associated with this form, newvcorp.com, has been registered to Perfect Privacy, and the sponsoring registrar was Register.com. According to Perfect Privacy's website, Perfect Privacy is a "Web.com Company," and "Perfect Privacy® is a registered trademark of Web.com Group, Inc." A screenshot of Perfect Privacy's website is attached to this complaint as Exhibit 14. According to Web.com's 2017 SEC Form 10-K Exhibit 21.1, Register.com is a subsidiary of Web.com. Newvcorp.com is currently registered to NVSC, listing the Drums, Pennsylvania Post Office Box as its address. Copies of the WHOIS data for newvcorp.com during Perfect Privacy's registration and the current WHOIS data are attached to this complaint as Exhibit 15.

56.     Between 2013 and 2017, NVSC published lists of tens of thousands of domain names available for sale on the domain name sales page of its website. Numerous domain names published on these lists incorporate Plaintiffs' Trademarks or terms that are confusingly similar to Plaintiffs' Trademarks, including facebookonline.net, instagramfeed.com, and whatsapps.com. Some of the Infringing Domain Names that NVSC still owns appeared on these lists.

57.     On information and belief, NVSC works in concert with other Web.com-related entities to transfer domain name registrations between these related entities. For example, the domain name ak-instagram.com was passed back and forth between NVSC and Perfect Privacy at least twice between 2014 and

2016.  Similarly, the domain jamesholmesfacebook.com was transferred from

NVSC to Perfect Privacy in July 2014, with Register.com listed as the sponsoring

registrar in each record.

58.    In addition to the 74 Infringing Domain Names registered by NVSC,

NVSC has previously registered, as the registrant or registrant organization, at least

204 other domain names that incorporate Plaintiffs' Trademarks or terms that are

confusingly similar to Plaintiffs' Trademarks (the "Past Infringing Domain

Names").  A list of these Past Infringing Domain Names and a copy of the WHOIS

data is attached hereto as Exhibit 16.

### 4.    NVSC <u>Uses</u> Infringing Domain Names with a Bad Faith Intent to Profit from Plaintiffs' Trademarks

59.    Consistent with its well-documented business practices, NVSC also

uses the Infringing Domain Names with a bad faith intent to profit from "pay-per-

click" revenue generated from the Infringing Domain Names and Associated

Websites.  NVSC uses 63 of the 74 Infringing Domain Names in connection with

similarly-designed "pay-per-click" Associated Websites.  As of March 29, 2021,

11 of the 74 Infringing Domain Names did not resolve to an active "pay-per-click"

website.

60.    On information and belief, NVSC intends that the Infringing Domain

Names will attract a large number of Internet users, and intends to divert

consumers to the Associated Websites, which host revenue-generating content or

links to other websites.  On information and belief, each time a diverted consumer

visits these Associated Websites and clicks on one of the links or advertisements,

NVSC earns revenue.  Many of the Associated Websites use Plaintiffs'

Trademarks and other well-known brands to confuse users into clicking on links to

generate additional revenue.  Screenshots of the active Associated Websites

located at the Infringing Domain Names are attached to this complaint as Exhibit

17.

61.    For example, as shown below, the Associated Website for the

Infringing Domain Name whatsappid.com contained links that include the

WhatsApp Trademarks and other well-known brands Nokia, iPhone, and

Windows.  On information and belief, NVSC generates revenue each time a

consumer is diverted to and clicks on one of these trademark-based links.



62.     Some of the Associated Websites have also been flagged for suspected phishing and other nefarious website activities as shown below in a security warning when trying to access the Associated Website for the Infringing Domain Name instagramservers.com.



63.     Also consistent with its history of attempting to profit from third-party trademark rights, NVSC has a history of cybersquatting on other well-known or famous trademarks, or confusingly similar variations of such trademarks.  NVSC has been found to have violated the UDRP by registering and using in bad faith domain names that were identical or confusingly similar to many other well-known trademarks, including, for example, AMAZON, IKEA, and STATE FARM.

64.     On information and belief, NVSC used the Past Infringing Domain Names with a bad faith intent to profit.

## COUNT I

**Violation of the Anti-Cybersquatting Consumer Protection Act
(15 U.S.C. § 1125(d))**

65.     Plaintiffs reallege and incorporate by reference all of the preceding
paragraphs.

66.     Plaintiffs' Trademarks were distinctive or famous and federally
registered at the time of NVSC's registration of the Infringing Domain Names and
Past Infringing Domain Names.

67.     The Infringing Domain Names and Past Infringing Domain Names are
identical or confusingly similar to one or more of Plaintiffs' Trademarks.

68.     The Infringing Domain Names are dilutive of one or more of the
Facebook Trademarks and Instagram Trademarks.

69.     NVSC registered, trafficked in, or used the Infringing Domain Names
and Past Infringing Domain Names with a bad faith intent to profit from Plaintiffs'
Trademarks.

70.     NVSC does not have any trademark or other intellectual property
rights in the Infringing Domain Names or Past Infringing Domain Names.

71.     The Infringing Domain Names and Past Infringing Domain Names do
not consist of the legal name of NVSC, nor do they consist of a name that is
otherwise commonly used to identify NVSC.

72.     NVSC has not made any prior use of the Infringing Domain Names or Past Infringing Domain Names in connection with the bona fide offering of any goods or services.

73.     NVSC has not made a bona fide noncommercial or fair use of Plaintiffs' Trademarks on a website accessible at any of the Infringing Domain Names or Past Infringing Domain Names.

74.     NVSC registered, trafficked in, or used the Infringing Domain Names and Past Infringing Domain Names to divert consumers to associated websites for NVSC's commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the associated websites.

75.     NVSC offered to transfer, sell, or otherwise assign the Infringing Domain Names and Past Infringing Domain Names for financial gain without having used, or having an intent to use, the Infringing Domain Names or Past Infringing Domain Names in the bona fide offering of any goods or services.

76.     NVSC has registered at least 21 Infringing Domain Names which NVSC knows are identical or confusingly similar to the WhatsApp Trademarks that were distinctive at the time of registration of the Infringing Domain Names.

77.     NVSC has registered at least 53 Infringing Domain Names which NVSC knows are dilutive of the Facebook Trademarks and Instagram Trademarks that were famous at the time of registration of the Infringing Domain Names.

78.     NVSC did not believe or have reasonable grounds to believe that the use of the Infringing Domain Names or Past Infringing Domain Names was fair use or otherwise lawful.

79.     NVSC's acts constitute cybersquatting in violation of 15 U.S.C. § 1125(d).

80.     As a consequence of NVSC's cybersquatting, Plaintiffs have been and will continue to be irreparably harmed unless enjoined by this Court.  Therefore, Plaintiffs have no adequate remedy at law and are entitled to injunctive relief, including transfer of the Infringing Domain Names to Plaintiffs.

81.     NVSC knew or should have known of Plaintiffs' rights in Plaintiffs' Trademarks, and NVSC's infringement has been knowing, willful, and deliberate, making this an exceptional case within the meaning of 15 U.S.C. § 1117 and entitling Plaintiffs to recover their attorneys' fees incurred in connection with this action.

82.     Plaintiffs are entitled to recover NVSC's profits, Plaintiffs' actual damages trebled, and the costs of this action.  Instead of actual damages and profits, Plaintiffs may, at their election, be awarded statutory damages of $100,000 per Infringing Domain Name and Past Infringing Domain Name, 15 U.S.C. § 1117(d).

## COUNT II

### Federal Trademark and Service Mark Infringement
### (15 U.S.C. § 1114)

83.     Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

84.     Each Plaintiff owns and has continuously used its respective trademarks such that Plaintiffs' Trademarks have come to mean, and are understood by consumers to signify, the respective Plaintiffs and their goods and services.

85.     As described above, NVSC uses Plaintiffs' Trademarks in the Infringing Domain Names and used Plaintiffs' Trademarks in the Past Infringing Domain Names to divert Internet users to NVSC's revenue-generating associated websites and in connection with the advertised sale of the Infringing Domain Names and Past Infringing Domain Names.

86.     NVSC's actions constitute use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of registered trademarks of Plaintiffs in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion or mistake, or to deceive, in violation of 15 U.S.C. § 1114.

87.     NVSC has used and continues to use Plaintiffs' Trademarks without Plaintiffs' authorization.

88.     As a consequence of NVSC's unauthorized use of Plaintiffs' Trademarks, Plaintiffs have been and will continue to be irreparably harmed unless enjoined by this Court.  Therefore, Plaintiffs have no adequate remedy at law and are entitled to injunctive relief.

89.     NVSC knew or should have known of Plaintiffs' rights in Plaintiffs' Trademarks, and NVSC's infringement has been knowing, willful, and deliberate, making this an exceptional case within the meaning of 15 U.S.C. § 1117 and entitling Plaintiffs to recover their attorneys' fees incurred in connection with this action.

90.     Plaintiffs are entitled to recover NVSC's profits, Plaintiffs' actual damages trebled, and the costs of this action.

## COUNT III

**Federal Trademark and Service Mark Infringement and False Designation of Origin**
**(15 U.S.C. § 1125(a))**

91.     Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

92.     Plaintiffs' Trademarks are distinctive marks that are associated with Plaintiffs and identify their respective businesses, products, and services.

93.     NVSC's actions constitute use in interstate commerce of a false designation of origin, false or misleading description of fact, or false or misleading

representation of facts that is likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of the goods and services with Plaintiffs, or as to origin, sponsorship, or approval of the goods and services provided by NVSC in violation of 15 U.S.C. § 1125(a).

94.     As a consequence of NVSC's unauthorized use of Plaintiffs' Trademarks, Plaintiffs have been and will continue to be irreparably harmed unless enjoined by this Court.  Therefore, Plaintiffs have no adequate remedy at law and are entitled to injunctive relief.

95.     This is an exceptional case within the meaning of 15 U.S.C. § 1117 and entitling Plaintiffs to recover their attorneys' fees incurred in connection with this action.

96.     Plaintiffs are entitled to recover NVSC's profits, Plaintiffs' actual damages trebled, and the costs of this action.

## COUNT IV

**Federal Trademark Dilution of the Facebook Trademarks and Instagram
Trademarks
(15 U.S.C. § 1125(c))**

97.     Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

98.     The Facebook Trademarks and Instagram Trademarks are famous, as that term is used in 15 U.S.C. § 1125(c), and were famous before NVSC's use of

them and variations of them in commerce.  This fame is based on, among other things, the inherent distinctiveness and federal registration of each of the Facebook Trademarks and Instagram Trademarks as well as the extensive and exclusive worldwide use, advertising, promotion, and recognition of them.

99.    NVSC's use of the Facebook Trademarks and Instagram Trademarks, and variations thereof, in commerce is likely to cause dilution by blurring or dilution by tarnishment of these trademarks.

100.   NVSC's acts constitute dilution by blurring or dilution by tarnishment in violation of 15 U.S.C. § 1125(c), entitling Facebook and Instagram to relief.

101.   NVSC has unfairly profited from its conduct.

102.   NVSC damaged the goodwill associated with the Facebook Trademarks and Instagram Trademarks and will continue to cause irreparable harm.

103.   Facebook's and Instagram's remedy at law is not adequate to compensate them for injuries inflicted by NVSC.  Accordingly, Facebook and Instagram are entitled to permanent injunctive relief pursuant to 15 U.S.C. § 1116.

104.   Because NVSC acted willfully, Facebook and Instagram are entitled to damages, and those damages should be trebled pursuant to 15 U.S.C. § 1117.

105.   Plaintiffs are entitled to recover NVSC's profits, Plaintiffs' actual damages, and the costs of this action.

106.   This is an exceptional case within the meaning of 15 U.S.C. § 1117 and entitling Plaintiffs to recover their attorneys' fees incurred in connection with this action.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request judgment against NVSC, including without limitation the Related Entity Does, as follows:

A. That judgment be entered in Plaintiffs' favor on all claims.

B. That the Court find that:

    (i).   NVSC has registered, trafficked in, and used one or more of the Infringing Domain Names and Past Infringing Domain Names with a bad faith intent to profit from Plaintiffs' Trademarks in violation of 15 U.S.C. § 1125(d);

    (ii).   NVSC has infringed the rights of Plaintiffs in the federally registered Facebook Trademarks, Instagram Trademarks, and WhatsApp Trademarks in violation of 15 U.S.C. § 1114(1);

    (iii).   NVSC has infringed the rights of Plaintiffs in the Facebook Trademarks, Instagram Trademarks, and WhatsApp Trademarks in violation of 15 U.S.C. § 1125(a); and

(iv).   NVSC has diluted the rights of Facebook and Instagram in the federally registered Facebook Trademarks and Instagram Trademarks in violation of 15 U.S.C. § 1125(c).

C. That each of the above acts was willful, knowing, and/or deliberate.

D. That the Court issue a permanent injunction enjoining and restraining NVSC, including without limitation the Related Entity Does, and their officers, agents, servants, employees, attorneys, successors, and assigns, and all other persons who are in active concert with or in participation with or affiliated with NVSC, from:

(i).   Registering, trafficking in, or using, with a bad faith intent to profit, any domain name that is identical or confusingly similar to Plaintiffs' Trademarks; and

(ii).   Engaging in any use of Plaintiffs' Trademarks, or any mark or designation, in connection with any domain name, that is likely to cause confusion, or to cause mistake as to the affiliation of that use with Plaintiffs.

E. That the Court issue an order requiring NVSC, including without limitation the Related Entity Does, to transfer the Infringing Domain Names to Plaintiffs by reason of NVSC's cybersquatting in accordance with 15 U.S.C. § 1125(d)(1)(C).

F. That Plaintiffs be awarded damages for NVSC's trademark infringement and false designation of origin, including compensatory damages, NVSC's profits, and all other damages permitted by law, including that these damages be trebled due to NVSC's willfulness as permitted by the provisions of 15 U.S.C. § 1117.

G. That NVSC be ordered to account for and disgorge to Plaintiffs all amounts by which NVSC has been unjustly enriched by reason of the unlawful acts complained of.

H. That, at Plaintiffs' election instead of actual damages or profits, Plaintiffs be awarded $100,000 in statutory damages for each of the Infringing Domain Names and Past Infringing Domain Names by reason of NVSC's cybersquatting in accordance with the provisions of 15 U.S.C. § 1117.

I. That Plaintiffs be awarded pre-judgment and post-judgment interest on all damages awarded against NVSC.

J. That Plaintiffs be awarded its costs incurred in this suit, including but not limited to reasonable attorneys' fees.

K. For such other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs Facebook, Inc, Instagram, LLC, and WhatsApp LLC hereby demand a trial by jury to decide all issues so triable in this case.

Dated:  April 15, 2021

**Royer Cooper Cohen Braunfeld LLC**

By:  /s  Barry L. Cohen

      Barry L. Cohen, Bar No. 68864
      bcohen@rccblaw.com
      101 West Elm Street, Suite 400
      Conshohocken, PA 19428
      Telephone: 484.362.2628
      Facsimile:  484.362.2630

**PERKINS COIE LLP**

      William C. Rava, (*pro hac vice forthcoming*)
      WRava@perkinscoie.com
      Fabricio Vayra, (*pro hac vice forthcoming*)
      FVayra@perkinscoie.com
      Jacob P. Dini, (*pro hac vice forthcoming*)
      JDini@perkinscoie.com
      1201 Third Avenue, Suite 4900
      Seattle, WA  98101-3099
      Telephone:  206.359.8000
      Facsimile:  206.359.9000

Attorneys for Plaintiffs
Facebook, Inc., Instagram, LLC, and
WhatsApp LLC.