UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

FACEBOOK, INC.; INSTAGRAM, LLC; and
WHATSAPP, LLC,

                    *Plaintiffs*,

                    v.

NEW VENTURES SERVICES CORP., and
DOES 1-10,

                    *Defendants*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

CIVIL ACTION – LAW
JURY TRIAL DEMANDED

HON. MALACHY E. MANNION
(electronically filed)

NO: 3:21-CV-00697


**BRIEF IN SUPPORT OF MOTION
TO DISMISS PLAINTIFFS' COMPLAINT IN PART**


COWAN, LIEBOWITZ & LATMAN, P.C
Eric J. Shimanoff (admitted *pro hac vice*)
Jeremy A. Berman (admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036
(212) 790-9226

MARSHALL DENNEHEY
WARNER COLEMAN & GOGGIN
Mark J. Kozlowski, Esquire
Attorney I.D. No: PA 308676
P.O. Box 3118
Scranton, PA 18505-3118
(570) 496-4600

*Counsel for Defendant New Ventures
Services Corp.*

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   FACTS AND PROCEDURAL HISTORY ........................................................... 3

III.  QUESTION PRESENTED .................................................................................. 7

IV.  LEGAL STANDARD .......................................................................................... 8

V.   ARGUMENT ........................................................................................................ 8

    A.   The Court Should Dismiss Plaintiffs' Untimely Claims against the Past Domains .................................................................................................. 8

        1.   Plaintiffs' Claims against the Past Domains that Are Barred by the Statute of Limitations .......................................................................... 8

            a.    Lanham Act Section 43(a) – False Designation of Origin ........ 10

            b.    Lanham Act Section 32(1) – Trademark Infringement ............. 11

            c.    Lanham Act Section 43(c) – Trademark Dilution ................... 11

            d.    Lanham Act Section 43(d) – Cyberpiracy ............................... 13

        2.   Plaintiffs' Claims against the Past Domains that Are Barred by Laches ................................................................................................ 15

    B.   The Court Should Dismiss All of Plaintiffs' Claims Against the Past Domains ................................................................................................ 16

        1.   Plaintiffs Have Failed to Plausibly Allege that NVS "Used" the Past Domains in Commerce .................................................................... 16

        2.   Plaintiffs Have Failed to Plausibly Allege NVS Registered the Past Domains in Bad Faith ..................................................................... 18

    C.   The Court Should Dismiss Plaintiffs' Non-Cyberpiracy Claims Against All the Disputed Domains ........................................................................ 19

        1.   Plaintiffs Have Failed to Plausibly Allege There Has Been Any Opportunity for Likely Confusion or Dilution .................................... 19

        2.   Plaintiffs Have Failed to Plausibly Allege a Claim for Dilution ......... 20

            a.    Plaintiffs Have Failed to Sufficiently Allege Their Marks Are Famous ............................................................................... 20

            b.    Plaintiffs Have Failed to Sufficiently Allege Likely Dilution .................................................................................. 22

VI.  CONCLUSION .................................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**

*Academy of Motion Picture Arts & Sciences v. GoDaddy.com, Inc.*,
2015 U.S. Dist. LEXIS 120871 (C.D. Cal Sep. 10, 2015) ................................ 20

*Am. Diabetes Ass'n v. Friskney Family Tr., LLC*,
177 F. Supp. 3d 855 (E.D. Pa. 2016) ............................................... *passim*

*Anaconda Co. v. Metric Tool & Die Co.*,
485 F. Supp. 410 (E.D. Pa. 1980) .................................................... 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................. 19

*Beauty Time, Inc. v. VU Skin Sys.*,
118 F.3d 140 (3d Cir. 1997) ........................................................ 8, 9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................. 8, 18

*Bentley v. NBC Universal, LLC*,
2016 U.S. Dist. LEXIS 191368 (C.D. Cal. Sep. 28, 2016) ........................... 22

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ......................................................... 8

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*,
11 F. Supp. 3d 317 (E.D.N.Y. 2014) ................................................ 19

*Coach Servs. v. Triumph Learning LLC*,
668 F.3d 1356 (Fed. Cir. 2012) ..................................................... 22

*Dentsply Sirona Inc. v. Net32, Inc.*,
2020 U.S. Dist. LEXIS 37100 (M.D. Pa. Mar. 4, 2020) ............................. 22

*GMC v. Keystone Auto. Indus.*,
453 F.3d 351 (6th Cir. 2006) ....................................................... 19

*Godigital Media Grp. v. Godigital, Inc.*,
2018 U.S. Dist. LEXIS 237258 (C.D. Cal. Mar. 9, 2018) ........................... 22

*GoPets Ltd. v. Hise*,
657 F.3d 1024 (9th Cir. 2011) ...................................................... 17

*Guardian Life Ins. Co. of Am. v. Am. Guardian Life Assurance Co.*,
943 F. Supp. 509 (E.D. Pa. 1996) ................................................... 12

*Heller Inc. v. Design Within Reach, Inc.*,
2009 U.S. Dist. LEXIS 71991 (S.D.N.Y. Aug. 14, 2009) .......................... 21, 22

*Holding Co. of the Vills. v. Little John's Movers & Storage, Inc.*,
    2017 U.S. Dist. LEXIS 202882 (M.D. Fla. Dec. 11, 2017) .............................................. 22

*HQM, Ltd. v. Hatfield*,
    71 F. Supp. 2d 500 (D. Md. 1999) .............................................................................. 17

*Ieradi v. Mylan Labs., Inc.*,
    230 F.3d 594 (3rd Cir. 2000) ....................................................................................... 8

*Island Insteel Sys. v. Waters*,
    296 F.3d 200 (3d Cir. 2002) ......................................................................................... 9

*Jews for Jesus v. Brodsky*,
    993 F. Supp. 282 (D.N.J. 1998), *aff'd*, 159 F3d. 1351 (3d Cir. 1998) ....................... 17

*Klein Elecs., Inc. v. Boxwave Corp.*,
    2011 U.S. Dist. LEXIS 69525 (S.D. Cal. June 27, 2011) .......................................... 23

*Knowles-Carter v. Feyonce, Inc.*,
    2017 U.S. Dist. LEXIS 233031 (S.D.N.Y. Sep. 23, 2017) ............................................ 6

*Lamparello v. Falwell*,
    360 F. Supp. 2d 768 (E.D. Va. 2004) ......................................................................... 14

*Lucas Nursery & Landscaping, Inc. v. Grosse*,
    359 F. 3d 806 (6th Cir. 2004) ..................................................................................... 13

*Mann v. Brenner*,
    375 F. App'x 232 (3d Cir. 2010) ................................................................................. 18

*Mehdiyev v. Qatar Nat'l Tourism Council*,
    2021 U.S. Dist. LEXIS 68444 (D. Colo. Apr. 1, 2021) ................................................ 6

*Millennium Enters v. Millennium Music*,
    33 F. Supp. 2d 907 (D. Ore. 1999) ............................................................................. 20

*Moseley v. V Secret Catalogue*,
    537 U.S. 418 (2003) ............................................................................................. 12, 13

*N. Light Tech., Inc. v. N. Lights Club*,
    236 F.3d 57 (1st Cir. 2001) ......................................................................................... 14

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
    998 F.2d 1192 (3rd Cir. 1993) ...................................................................................... 8

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) .......................................................................................... 8

*Reed v. Freebird Film Prods.*,
    2010 U.S. Dist. LEXIS 160104 (N.D. Ohio June 25, 2010) ....................................... 14

30615/022/3881660

*Renovation Realty, Inc. v. Esplanade*,
  2013 U.S. Dist. LEXIS 193962 (S.D. Cal. May 9, 2013) ..................................... 6

*Robinson v. Johnson*,
  313 F.3d 128 (3rd Cir. 2002) ........................................................................ 8

*Rodgers v. Lincoln Ben. Life Co.*,
  845 Fed. Appx. 145 (3rd Cir. 2021) ............................................................... 10

*Rose v. Pawlowski*,
  2019 U.S. Dist. LEXIS 202886 (E.D. Pa. Nov. 21, 2019) .................................. 10

*Ross v. Johns-Manville Corp.*,
  766 F.2d 823 (3d Cir. 1985) ........................................................................ 9

*S. Co. v. Dauben Inc.*,
  324 F. App'x 309 (5th Cir. 2009) .................................................................. 14

*S. Grouts & Mortars, Inc. v. 3M Co.*,
  2008 U.S. Dist. LEXIS 70222 (S.D. Fla. Sept. 16, 2008) .................................. 6

*Santana Products, Inc. v. Bobrick Washroom Equip., Inc.*,
  401 F.3d 123 (3d Cir. 2005) ..................................................................... 10, 15

*Saul Zaentz Co. v. Wozniak Travel, Inc.*,
  627 F. Supp. 2d 1096 (N.D. Cal. 2008) .......................................................... 10

*Senju Pharm. Co. v. Apotex, Inc.*,
  921 F. Supp. 2d 297 (D. Del. 2013) ............................................................... 6

*Stephens v. Clash*,
  796 F.3d 281 (3rd Cir. 2015) ........................................................................ 9

*Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*,
  315 F. Supp. 3d 1147 (C.D. Cal. 2018) .......................................................... 20

*TrafficSchool.com, Inc. v. Edriver Inc.*,
  653 F.3d 820 (9th Cir. 2011) ........................................................................ 19

**Statutes**

42 Pa. Cons. Stat. § 5524(7) ................................................................ 7, 12, 14

42 Pa. Cons. Stat. § 5527(b) ........................................................................ 11

54 Pa. Cons. Stat. § 1124 ............................................................................ 12

Lanham Act § 32(1), 15 U.S.C. § 1114(1) ................................................. *passim*

Lanham Act § 43(a), 15 U.S.C. § 1125(a) ................................................. *passim*

Lanham Act § 43(c), 15 U.S.C. § 1125(c) ................................................. *passim*

iii

Lanham Act § 43(d), 15 U.S.C. § 1125(d) ..................................................................... *passim*

Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §
    201-1 *et seq.* ......................................................................................................... *passim*

**Other Authorities**

2 Gilson on Trademarks § 5A.01 (2021) ................................................................. 12

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 7, 8

H.R. Rep. No. 106-412 pp. 5-6 (Oct. 25, 1999) ..................................................... 14

J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition* §§ 25A:41, 25A:42,
    25A:48, ............................................................................................................. 16, 19

30615/022/3881660

Defendant New Ventures Services Corp. ("NVS" or "Defendant") submits this brief in support of its motion to dismiss in part the complaint ("Complaint" or "Compl.") filed by Plaintiffs Facebook, Inc., Instagram, LLC and Whatsapp, LLC ("Plaintiffs").

## I.      <u>INTRODUCTION</u>

Through misleading and often false allegations ridden with hearsay, Plaintiffs attempt to paint as nefarious the common and legitimate practice of bulk domain name acquisitions, management and sales, in which domain owners register expired domains through automated processes that use trademark filtering processes, are unaware of the specific names of the hundreds of thousands of domains in their portfolios and do not select the actual content for the landing websites that contain prepopulated and dynamically generated links to further Internet searches. While NVS is confident it will defeat all of Plaintiffs' claims, the Court should dismiss Plaintiffs' claims discussed herein at the pleadings stage for failure to state a claim.

Despite Plaintiffs' admissions that they regularly search for and take action against domains registered by third parties, and despite Plaintiffs' admitted ability to search domain ownership information at any time, not once prior to filing suit did Plaintiffs even suggest to NVS that Plaintiffs took issue with any domains owned by NVS—including with respect to hundreds of domains that NVS has not owned in years. Many of Plaintiffs' claims against these domains previously owned by NVS are stale and barred by the statute of limitations and laches. Plaintiffs either knew or should have known about their purported claims years ago. Plaintiffs' delay is inexcusable as matter of law.

Moreover, the Court should dismiss all of Plaintiffs' claims against these old domains, not just those that are barred by the statute of limitations and laches, on additional grounds. Plaintiffs fail to plausibly allege that NVS "used" these old domains in commerce, a necessary element of Plaintiffs' claims for trademark infringement, false designation of origin and trademark dilution.

1

While Plaintiffs make specific allegations and provide screenshots of resolving websites concerning the domains currently owned by NVS, Plaintiffs' allegations concerning NVS's purported use of the past domains lack any detail and merely regurgitate the statutory language found in the Lanham Act. Plaintiffs' cyberpiracy claims against these old domains fail to state a claim for the same reason. Although cyberpiracy does not require allegations of use in commerce, Plaintiffs fail to provide specific factual allegations concerning NVS's alleged use of these old domains. Plaintiffs' regurgitation of the statutory language for cyberpiracy does not plausibly show bad faith intent to profit from Plaintiffs' marks.

The Court also should dismiss Plaintiffs' non-cyberpiracy claims—for trademark infringement, false designation of origin and trademark dilution—against all of the disputed domains, old and current. Plaintiffs have failed to plausibly allege that there has been any opportunity for likely confusion or likely dilution. Plaintiffs do not allege that anyone other than Plaintiffs or their attorneys viewed or had the opportunity to view any alleged landing pages associated with the disputed domains.

The Court should dismiss Plaintiffs' trademark dilution claims against all the disputed domains for the additional reason that Plaintiffs have failed to plausibly allege that their marks are famous and that dilution is likely to occur. The Court cannot simply presume Plaintiffs' marks are famous. Plaintiffs have failed to allege sufficient facts plausibly showing their marks are household names, including facts concerning the duration, extent and geographic reach of advertising and publicity of their marks, the amount, volume and geographic extent of sales of goods or services offered under the marks and the extent of actual recognition in the marks. Plaintiffs similarly make the conclusory allegation that NVS's use of Plaintiffs' marks is likely to cause dilution by blurring or tarnishment, without providing any factual basis therefor.

II.    **FACTS AND PROCEDURAL HISTORY**

Plaintiffs' Complaint essentially alleges that: (1) NVS registered and currently owns 74 domains (the "Current Domains") that are confusingly similar to or dilutive of Plaintiffs' trademarks; (2) NVS generally offered some of the Current Domains for sale (NVS did not offer to sell the domains to Plaintiffs); and (3) NVS used some of the Current Domains to resolve to landing pages that contain links with prepopulated suggestions for additional Internet searches. *See generally* Compl.  Plaintiffs mistakenly refer to these links as "advertisements."  *Id.* ¶ 60. However, Plaintiffs' own exhibit to the Complaint—the screenshots for the alleged landing pages for the Current Domains—clearly show that the links on those pages are not advertisements.  *Id.* Ex. 17.  The links merely are prepopulated suggested keywords for additional Internet searches that may be of interest to the user.  They are explicitly labeled as "Related Searches" or "Related Links."  *Id.*  Nearly all the landing pages also show that an Internet user can type in their own keyword into a search bar if they are not interested in the pre-populated searches.  *Id.*  Plaintiffs do not provide any allegations describing (or screenshots showing) what happens when an Internet user clicks on one of the suggested search links or types their own terms into a search bar.

The overwhelming majority of the suggested terms listed on the landing pages are generic or descriptive—such as "online dating," "shirts," "video game," "skincare," "instant credit," "personal injury lawyer," "proxies, "canopy tents," "local internet providers," "big tractors, "auto insurance quotes," "hammers," "condos," "vacation rentals," "real property records," "TV listings guide," "refurbished smart phones" and "online data protection"—terms in which Plaintiffs cannot and do not claim any trademark rights.  *Id.*  Plaintiffs' screenshots attached to their Complaint show that less than half of the Current Domains resolve to a landing page where one or more of the suggested links contain or comprise Plaintiffs' marks.  *Id.*  Most of these references likely would be viewed by Internet users as links to searches providing information ***about*** Plaintiffs and

3

not links associated with or originating *from* Plaintiffs themselves. *Id.* Examples of these links are "Facebook friends," "Facebook job postings," "How to start a Facebook shop," "get Instagram followers, "Ads for Facebook," "Facebook privacy change," "How to install Whatsapp" and "Whatsapp emoticons." *Id.* Even when links contain Plaintiffs' trademarks, they almost always are surrounded by other links containing generic or descriptive terms, making clear to any Internet user that the links are not affiliated with Plaintiffs. *Id.*

Nearly half of the landing pages expressly disclaim any relationship between the owner of the domain and any party that may be affiliated with the terms that appear in the links:

> The Sponsored Listings displayed above are served automatically by a third party. Neither the service provider nor the domain owner maintain any relationship with the advertisers. In case of trademark issues please contact the domain owner directly (contact information can be found in whois).

*Id.*[1] Nearly all of the remaining landing pages provide a "Trademark Free Notice" link, which calls up the following text in a pop-up window when clicked:

> TRADEMARK FREE NOTICE - New Ventures has no knowledge of whether any content on this page violates any third party intellectual property rights. New Ventures will make commercially reasonable efforts to remove any content reasonably objected to by the Owner of a pre-existing trademark. If you have a trademark issue, please contact trademarkcomplaint@newvcorp.com.

*Id.*[2] Nearly all of the landing pages have links to a privacy policy. Compl. Ex. 17. Although Plaintiffs have failed to attached screenshots showing the content of these privacy links, clicking

---

[1]     Some of Plaintiffs' screenshots appear to have only captured a portion of the landing page and omit (presumably inadvertently) this language.

[2]     Plaintiffs do not include this pop up in their screenshots. Moreover, the Current Domains are inactive. But the language of the "Trademark Free Notice" pop up can be found by resolving other active domains owned by NVS, including garden-yard.com and ikkitoys.com. *See* Exhibit A hereto.

on that privacy link makes clear that another company, and not Plaintiffs, facilitates the links on the landing page.[3]

At least four of the screenshots do not show any content at a purported landing page (including helps-instagram.com, instagram-login.com, instagram-bio.com, instagramtweet.com), and Plaintiffs do not appear to have visited a landing page for five of the Current Domains.  Compl. Ex. 17.  None of the landing pages looks anything like any website consumers would expect to be associated with Plaintiffs and their services.  *Compare* Compl. Ex. 17 with Exhibit B hereto. Importantly, Plaintiffs do not make any allegations that anyone other than Plaintiffs and their counsel saw or are likely to see these landing pages.

In just a few allegations, Plaintiffs also make claims against domains that NVS owned in the past (the "Past Domains," and together with the Current Domains, the "Disputed Domains"). Using public historical WhoIs database records, Plaintiffs claim to have identified 204 Past Domains.  Compl. ¶ 58 & Ex. 16.  However, Plaintiffs mistakenly list two of the Past Domains— instafastfollowers.com and httpinstagram.com—on their lists of both Current Domains and Past Domains.  *Compare* Compl. Exs. 12 & 16.[4]  Other than in conclusory allegations that merely recite the statutory elements of Plaintiffs' cyberpiracy claims, Plaintiffs make no specific allegations about ***how*** NVS purportedly used each of the Past Domains.  *Id*. ¶¶ 64, 69, 74, 75, 85.  By contrast, Plaintiffs devote significant written allegations and nearly 100 pages of exhibits showing how the Current Domains allegedly were used.  *See generally* Compl.  Plaintiffs make only one specific

---

[3]     The text of the privacy policy similarly can be found through links at the sites for garden-yard.com and ikkitoys.com.  *See* Exhibit A hereto.

[4]     Thus, for purposes of this motion, NVS will deem these two domains as Current Domains and not Past Domains.

allegation concerning the Past Domains—that NVS' allegedly owned them in the past—which allegations include screenshots from public historical WhoIs database records. *Id*. ¶ 58 & Ex. 16.

The same public historical WhoIs database relied upon in Plaintiffs' Complaint shows that NVS has not owned many of these Past Domains for several years. As shown in the WhoIs records attached hereto as Exhibit C and as listed in Exhibits D & E hereto: (1) at least 41 domains left NVS's portfolio more than six years prior to the date Plaintiffs filed their Complaint (the "Pre 4/15/2015 Domains"); and (2) at least 108 domains left NVS's portfolio more than two years prior to the date Plaintiffs filed their Complaint (the "Pre 4/15/2019 Domains").[5]

Plaintiffs' primary claim is for cyberpiracy under Lanham Act Section 43(d), 15 U.S.C. § 1125(d) (Count I), which requires Plaintiffs to allege and ultimately prove that NVS registered, trafficked in or used the Disputed Domains, that the Disputed Domains are confusingly similar to or dilutive of Plaintiffs' marks and that NVS has "a bad faith intent to profit from that mark," not just bad faith as found in other contexts or an intent to profit generally. *See* 15 U.S.C. § 1125(d). Plaintiffs perhaps misunderstand this requirement of bad faith intent to profit from a mark, suggested by the fact that Plaintiffs attach to and reference within their Complaint irrelevant hearsay articles from random websites purporting generally to tarnish NVS and its alleged corporate affiliates (who are not even named parties in the litigation). Compl. ¶¶ 36, 37 & Exs. 4-

---

[5]     Not only do Plaintiffs rely on and attach to their Complaint WhoIs data concerning the Past Domains, thus making the data integral to their pleadings, but courts frequently take judicial notice of public WhoIs domain registration data. *See, e.g., Renovation Realty, Inc. v. Esplanade*, 2013 U.S. Dist. LEXIS 193962, at *4-5 (S.D. Cal. May 9, 2013); *Mehdiyev v. Qatar Nat'l Tourism Council*, 2021 U.S. Dist. LEXIS 68444, at *16 (D. Colo. Apr. 1, 2021); *S. Grouts & Mortars, Inc. v. 3M Co.*, 2008 U.S. Dist. LEXIS 70222, at *49-50 (S.D. Fla. Sept. 16, 2008). *See also Senju Pharm. Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 304 (D. Del. 2013) (relying on public data concerning patent application); *Knowles-Carter v. Feyonce, Inc.*, 2017 U.S. Dist. LEXIS 233031, at *31 (S.D.N.Y. Sep. 23, 2017) (relying on public data concerning trademark application).

11.  Moreover, Plaintiffs' immature tactics are ironic since Facebook itself has been highly criticized for knowingly hosting infringing material and ignoring requests from rightsholders. *See* Exhibit F hereto.

Although the primary allegations against NVS appear to sound in cyberpiracy, Plaintiffs also assert claims for: trademark infringement under Lanham Act Section 32(1), 15 U.S.C. § 1114(1) (Count II); false designation of origin under Lanham Act Section 43(a), 15 U.S.C. § 1125(a) (Count III); and trademark dilution under Lanham Act Section 43(c), 15 U.S.C. § 1125(c) (Count IV).

## III.   QUESTION PRESENTED

Whether this Honorable Court should grant NVS' Motion to Dismiss Plaintiffs' Complaint in Part under Fed. R. Civ. P. 12(b)(6) as follows:

a.   Plaintiffs' cyberpiracy claims under Lanham Act Section 43(d), 15 U.S.C. § 1125(d), against the Past Domains for failure to allege any facts plausibly showing bad faith, as required under the Lanham Act.

b.   Plaintiffs' trademark infringement, false designation of origin and dilution claims under Lanham Act Sections 32(1), 43(a) and 43(c), 15 U.S.C. §§ 1114(1), 1125(a) and 1125(c), against the Past Domains for failure to allege any facts plausibly showing the Past Domains were "used in commerce," as required under the Lanham Act.

c.   Plaintiff's trademark infringement, false designation of origin and dilution claims under Lanham Act Sections 32(1), 43(a) and 43(c), 15 U.S.C. §§ 1114(1), 1125(a) and 1125(c), against all the Disputed Domains for failure to allege any facts plausibly showing likely confusion or dilution, as required under the Lanham Act.

d.   Plaintiffs' trademark infringement, false designation of origin, dilution and cyberpiracy claims under Lanham Act Sections 32(1), 43(a), 43(c) and 43(d), 15 U.S.C. §§ 1114(1), 1125(a), 1125(c) and 1125(d), against the Past Domains that left Defendant's possession, custody or control outside of the applicable statute of limitations, based on the affirmative defenses of statute of limitations (42 Pa. Cons. Stat. §§ 5524(7); 5527(b)) and laches.

*Suggested Answer:  In the Affirmative*

## IV.   LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(b)(6), the Court must dismiss Plaintiffs' claims if the Complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Complaint must provide the grounds for entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (*quoting Twombly*, 550 U.S. 544 at 555). Plaintiffs' allegations must show that a claim is plausible, not merely conceivable. *Id*. at 234 (citing *Twombly*, 550 U.S. 544 at 570). The Court may dismiss a complaint based on an affirmative defense, such as statute of limitations or laches, on and under the same standards as a motion under Rule 12(b)(6). *See Robinson v. Johnson*, 313 F.3d 128, 134-35 (3rd Cir. 2002).

On a motion to dismiss, the Court may consider the well pleaded allegations in the complaint, documents integral to or explicitly relied upon in the complaint and facts upon which the Court may take judicial notice. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3rd Cir. 1993); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Ieradi v. Mylan Labs., Inc.*, 230 F.3d 594, 600 (3rd Cir. 2000).

## V.   ARGUMENT

### A.   The Court Should Dismiss Plaintiffs' Untimely Claims against the Past Domains

#### 1.   Plaintiffs' Claims against the Past Domains that Are Barred by the Statute of Limitations

"The Lanham Act contains no express statute of limitations and the general rule is that when a federal statute provides no limitations for suits, the court must look to the state statute of limitations for analogous types of actions." *Beauty Time, Inc. v. VU Skin Sys.*, 118 F.3d 140, 143 (3d Cir. 1997). Federal courts sitting in Pennsylvania "ordinarily apply the Pennsylvania statute

of limitations." *Ross v. Johns-Manville Corp.*, 766 F.2d 823, 826 (3d Cir. 1985). To determine the most analogous state law claim, the court looks to the "substantive elements" of the relative claims. *See Island Insteel Sys. v. Waters*, 296 F.3d 200, 208 (3d Cir. 2002). Where, as here, Plaintiffs assert claims under multiple provisions of the Lanham Act, the Court must examine each claim separately to determine the most analogous state law claim and corresponding statute of limitations. *See Am. Diabetes Ass'n v. Friskney Family Tr., LLC*, 177 F. Supp. 3d 855, 879-82 (E.D. Pa. 2016).

Importantly, the statute of limitations begins to run at the time "the right to institute and maintain the suit arises." *Beauty Time*, 118 F.3d at 144 (citations and quotations omitted). In other words, "aggrieved parties must . . . bring their claim within [the applicable statute of limitations] when they learned or should have learned, through the exercise of due diligence, that they have a cause of action." *Id*. at 148. "A plaintiff's ignorance regarding the full extent of his injury is irrelevant to the discovery rule's application, so long as the plaintiff discovers or should have discovered that he was injured." *Stephens v. Clash*, 796 F.3d 281, 288 (3rd Cir. 2015). The face of Plaintiffs' complaint and facts in the possession of Plaintiffs and upon which this court may take judicial notice show as a matter of law that Plaintiffs should have known about their claims through the exercise of reasonable diligence by no later than the date on which NVS last owned each of the Past Domains.

NVS's prior ownership of the Past Domains was open and notorious and easily could have be determined by searching the public WhoIs records at any time. Plaintiffs apparently had no difficulty finding WhoIs records concerning NVS's alleged prior ownership of these domains—which records are attached to Plaintiffs' complaint—when Plaintiffs belatedly chose to file suit. Compl. Ex. 16. Indeed, Facebook—an Internet-related company itself—owns two ICANN-

9

accredited domain name registrars, through which Facebook maintains registration of its primary facebook.com and fb.com domains, and which provide WhoIs lookup services.  *See* Exhibit G hereto.  Plaintiffs similarly could have attempted to resolve each of the Past Domains to determine the content of any websites associated with the domains, as Plaintiffs have done here with the Current Domains.  Plaintiffs have not made and cannot make any allegations that NVS attempted to hide their prior ownership or alleged use of the Past Domains.  Moreover, Plaintiffs have publicly admitted that they "scan the internet" for allegedly confusingly similar domain names on a regular basis.  *See* Exhibit H hereto.  Based on these searches, one or more of Plaintiffs have filed at least half a dozen domain name litigations and nearly 200 domain name dispute arbitration proceedings over the past decade.  *See* Exhibit I hereto.  Many of the litigations, as here, asserted claims against numerous domains (even as high as nearly 1,000 domains) in one pleading.  *See id*. Under these circumstances, Plaintiffs should have been aware of their claims as of at latest the date on which NVS last owned each of the Past Domains.  *See Rodgers v. Lincoln Ben. Life Co.*, 845 Fed. Appx. 145, 148 (3rd Cir. 2021) ("sophisticated party who was able to further investigate at any time"); *Rose v. Pawlowski*, 2019 U.S. Dist. LEXIS 202886, at *13-15, (E.D. Pa. Nov. 21, 2019) (public documents and filings in prior litigation); *Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096, 1113 (N.D. Cal. 2008) (plaintiff received trademark search reports).

The appropriate statute of limitations for each of Plaintiffs' four Lanham Act claims are analyzed as follows.

a.  **Lanham Act Section 43(a) – False Designation of Origin**

The Third Circuit has held that claims under Section 43(a) are most analogous to claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 201-1 *et seq.*, and thus subject to a six year "catch-all" statute of limitations under 42 Pa. Cons. Stat. § 5527(b).  *See Santana Products, Inc. v. Bobrick Washroom Equip., Inc.*, 401

F.3d 123, 135-37 (3d Cir. 2005).  Plaintiffs filed the instant action on April 15, 2021.  Applying the six year statute of limitations, Plaintiffs' Section 43(a) claims against any domain that left NVS's possession on or before April 14, 2015, namely, the Pre 4/15/2015 Domains, are time-barred and should be dismissed with prejudice.

**b.**     **Lanham Act Section 32(1) – Trademark Infringement**

The Third Circuit has not yet ruled on whether claims for trademark infringement under Section 32(1) similarly are most analogous to the those under the UTPCPL.  Without waiving its right in the future to assert that a shorter limitations period may be more appropriate for a claim under Section 32(1), solely for purposes of this motion, NVS acknowledges that the Court may analyze the statute of limitations for Plaintiffs' Section 32(1) claims under the UTPCPL's six year statute of limitations.  *See Am. Diabetes Ass'n*, 177 F. Supp. 3d at 879 .  Applying the six year statute of limitations, Plaintiffs' Section 32(1) claims against the Pre 4/15/2015 Domains are time-barred and should be dismissed with prejudice.

**c.**     **Lanham Act Section 43(c) – Trademark Dilution**

Section 43(c) allows the owner of a famous mark to obtain relief against another person who, "at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark."  15 U.S.C. § 1125(c)(1).  "'[D]ilution by blurring' is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark."  *Id*. § 1125(c)(2)(A).  "'[D]ilution by tarnishment' is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark."  *Id*. § 1125(c)(2)(B).  Unlike claims for trademark infringement and false designation of origin or claims under the UTPCPL, Section 43(c) was enacted solely to protect brand owner's property rights in the value of their trademark:

11

> Federal dilution law protects famous trademarks from unauthorized uses that are likely to impair their distinctiveness or harm their reputation . . . . [Unlike trademark infringement, which protects the] right of the public to be free from confusion . . . [d]ilution law . . . protects only a private interest, and a narrow one at that: the distinctiveness and reputation of famous trademarks.

2 Gilson on Trademarks § 5A.01 (2021).  *See also Moseley v. V Secret Catalogue*, 537 U.S. 418, 429 (2003) ("trademark dilution [is] not motivated by an interest in protecting consumers").

Thus, the UTPCPL, a consumer protection statute, is ***not*** the most analogous statute for a dilution claim.  Instead, Pennsylvania's own dilution statute is most analogous to a claim of federal dilution under Section 43(c):

> The owner of a mark which is famous in this Commonwealth shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use of a mark or trade name if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark and to obtain such other relief as is provided in this section.

54 Pa. Cons. Stat. § 1124 (statute entitled "Injury to business or reputation; dilution").  Indeed, the text of the federal and state statutes are virtually identical.

Consistent with the claim's sole purpose of protecting the property and reputational rights of brand owners, the statute of limitations for a claim under Pennsylvania's dilution statute is two years for an action to recover damages or injury to persons or property under 42 Pa. Cons. Stat. § 5524(7).  *See Guardian Life Ins. Co. of Am. v. Am. Guardian Life Assurance Co.*, 943 F. Supp. 509, 517 (E.D. Pa. 1996).  Applying the two year statute of limitations, Plaintiffs' Section 43(c) claims against any domain that left NVS's possession on or before April 14, 2019, namely, the Pre 4/15/2019 Domains, are time-barred and should be dismissed with prejudice.[6]

---

[6]     In the alternative, should the Court find that claims under the UTPCPL (and its six year statute of limitations) are more akin to Section 43(c) claims for dilution, the Court still should find at minimum that Plaintiffs' Section 43(c) claims against the Pre 4/15/2015 Domains are time-barred and dismiss the same with prejudice.

### d.      __Lanham Act Section 43(d) – Cyberpiracy__

The Third Circuit similarly has not ruled on the most analogous claims under Pennsylvania law (and appropriate statute of limitations) for cyberpiracy claims under Section 43(d).  *See Am. Diabetes Ass'n*, 177 F. Supp. 3d at 880 ("no precedent within this circuit could be located that definitively articulates what the analogous Pennsylvania statute of limitations is for cyberpiracy").

A successful claim for cyberpiracy requires that: (1) the defendant had a bad faith intent to profit from plaintiff's mark; and (2) the defendant registered, trafficked in or used a domain name that (a) is identical of confusingly similar to a distinctive mark or (b) is identical, confusingly similar to or dilutive of a famous mark.  *See* 15 U.S.C. § 1125(d)(1)(A).  Unlike claims for trademark infringement and false designation of origin—which are primarily concerned with protecting against consumer confusion as to the source, sponsorship or affiliation of a parties' goods and services, *see Moseley*, 537 U.S. at 429 (2003)—Section 43(d) was enacted primarily to protect the property rights of trademark owners against "the practice of cybersquatters registering several hundred domain names in an effort to sell them to the legitimate owners of the mark." *Lucas Nursery & Landscaping, Inc. v. Grosse*, 359 F. 3d 806, 810 (6th Cir. 2004).  As set forth in the House Judiciary Committee Report on H.R. 3028 when enacting Section 43(d):

> Since domain names are available . . . on a first-come, first-served basis, some owners have discovered that the domain name containing their trademark has already been registered.  The situation has been aggravated by some people, known as 'cyberpirates,' registering domain names in the hope that they might be able to sell them to companies that place a high value on these trademarks.  These cyberpirates have no intention of using the domain name in commerce, and instead often attempt to exact money from a company in exchange for domain names that relate to that company's trademarks.

H.R. Rep. No. 106-412 pp. 5-6 (Oct. 25, 1999).

Primarily concerned with damage to intellectual property, claims of cyberpiracy under Section 43(d) are most akin to claims "for injury to person or property which is founded on

negligent, intentional, or otherwise tortious conduct," subject to a two year statute of limitations under 42 Pa. Cons. Stat. Ann. § 5524(7). *See Reed v. Freebird Film Prods.*, 2010 U.S. Dist. LEXIS 160104, at *9 (N.D. Ohio June 25, 2010) (applying limitations for injury to property); *Lamparello v. Falwell*, 360 F. Supp. 2d 768, 775 (E.D. Va. 2004) (same).

 *Am. Diabetes Ass'n* appears to be the only case within the Third Circuit that has examined the issue, finding cyberpiracy claims under the Lanham Act are most analogous to claims subject to a six year statute of limitations under the UTPCPL. However, the court in *Am. Diabetes Ass'n* erred in finding that Section 43(d)'s references to "confusingly similar" domain names made cyberpiracy more akin to the provision of the UTPCPL that prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 177 F. Supp. 3d at 881 (citing 73 Pa. Stat. Ann. § 201-2(4)(xxi)). While Section 43(d) prohibits the bad faith registration of domains "confusingly similar" to a mark, this language is not the same as likelihood of consumer confusion in the context of trademark infringement and false designation of origin claims. *See S. Co. v. Dauben Inc.*, 324 F. App'x 309, 318 (5th Cir. 2009) ("the likelihood of confusion test in trademark infringement law is different . . . than the test for 'confusingly similar' under ACPA"). Indeed, "confusing similarity" for cyberpiracy does not consider marketplace conditions, a key factor in any likelihood of confusion analysis. *See N. Light Tech., Inc. v. N. Lights Club*, 236 F.3d 57, 66 n.14 (1st Cir. 2001). The court in *Am. Diabetes Ass'n* conflated these two distinct principles and erred in equating federal cyberpiracy claims with the catch-all provision of the UTPCPL. The court in *Am. Diabetes Ass'n* also erred in failing to consider that confusing similarity is not required for a claim of cyberpiracy if the plaintiff can prove that the disputed domain name is dilutive of their famous mark. *See* 15 U.S.C. §

1125(d)(1)(A)(ii)(II).[7]  As discussed above, claims of dilution protect trademark owners' property rights, not consumers against confusion.

Since a claim under Section 43(d) is more akin to a claim of injury to property than to a claim under the UTPCPL, a two year statute of limitations applies.  Applying the two year statute of limitations, Plaintiffs' Section 43(d) claims against the Pre 4/15/2019 Domains are time-barred and should be dismissed with prejudice.[8]

### 2.   Plaintiffs' Claims against the Past Domains that Are Barred by Laches

"Laches consists of two elements: (1) inexcusable delay in bringing suit, and (2) prejudice to the defendant as a result of the delay."  *Santana Prods.*, 401 F.3d at 138.  "Once the statute of limitations has expired, the defendant enjoys the benefit of a presumption of inexcusable delay and prejudice."  *Id*. (citation omitted).  The burden than shifts to the plaintiff to show that "its delay was excusable ***and*** that its delay did not prejudice the defendant."  *Id*. at 139 (emphasis added).  To determine the appropriate statute of limitations for purposes of laches in defense to a Lanham Act claim, the court looks to the statute of limitations for the most analogous state law claim.  *Id*. at 135.  As noted above, the statute of limitations is six years for Plaintiffs' Section 43(a) and 32(1) claims and two years for Plaintiff's Section 43(c) and 43(d) claims.  Thus, a presumption of laches

---

[7]     Plaintiffs here allege *inter alia* in the context of their cyberpiracy claims that the disputed domain names "are dilutive of" their marks.  Compl. ¶ 68.

[8]     In the alternative, should the Court find that claims under the UTPCPL (and its six year statute of limitations) are more akin to Section 43(d) claims, the Court still should find at minimum that Plaintiffs' Section 43(d) claims against the Pre 4/15/2015 Domains are time-barred and dismiss the same with prejudice.

attaches to Plaintiffs' Section 43(a) and 32(1) claims against the Pre 4/15/2015 Domains and to Plaintiffs' Section 43(c) and 43(d) claims against the Pre 4/15/2019 Domains.[9]

Plaintiffs cannot rebut these presumptions as a matter of law. As discussed above, Plaintiffs are sophisticated Internet companies that for years have regularly scanned the Internet for, and filed actions or arbitration proceedings against, thousands of allegedly confusingly similar domains. Any delay is inexcusable as a matter of law. *See Anaconda Co. v. Metric Tool & Die Co.*, 485 F. Supp. 410, 430-31 (E.D. Pa. 1980).

### B.   The Court Should Dismiss All of Plaintiffs' Claims Against the Past Domains

While Plaintiffs' claims against some of the Past Domains are time-barred by the statute of limitations and laches, Plaintiffs' claims against *all* of the Past Domains are subject to dismissal for additional reasons.

### 1.   Plaintiffs Have Failed to Plausibly Allege that NVS "Used" the Past Domains in Commerce

To maintain its claims for trademark infringement, false designation of origin and trademark dilution under Lanham Act Sections 32(1), 43(a) and 43(c), Plaintiffs must plausibly allege that NVS "used" the challenged designation "in commerce." *See* 15 U.S.C. §§ 1114(1), 1125(a) and 1125(c). *See also* J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition* ("McCarthy") §§ 25A:41, 25A:42 (2020) ("For … infringement or dilution … the accused user must use the challenged designation in some commercial sense").

---

[9]      In the alternative, should the Court find that the six year statute of limitations applies to Plaintiffs' Section 43(c) and 43(d) claims, a presumption of laches attaches to Plaintiffs' Section 43(c) and 43(d) claims only against the Pre 4/15/2019 Domains.

16

Plaintiffs' Complaint contains detailed allegations and exhibits concerning NVS's alleged registration **and** use of the Current Domains.  Indeed, Plaintiffs allege in detail and provide screenshots of purportedly resolving website concerning nearly all of the Current Domains. Conversely, Plaintiffs only make one specific allegation concerning the Past Domains, namely, that NVS "has previously registered, as the registrant or registrant organization, at least 204 other domain names that incorporate Plaintiffs' Trademarks or terms that are confusingly similar to Plaintiffs' Trademarks," and attach to their pleading a list of the Past Domains and WhoIs data relating thereto.  *See* Compl. ¶ 58 & Ex. 16.  Unlike with respect to the Current Domains, Plaintiffs do not provide any specific allegations or screenshots purporting to describe or show how the Past Domains were actually used, including with respect to any purported resolving websites.  It is well-settled that the "the mere registration of a domain name . . . is not a 'commercial use' of a trademark" sufficient to trigger liability under Lanham Act Sections 32(1), 43(a) and 43(c).  *Jews for Jesus v. Brodsky*, 993 F. Supp. 282, 307 (D.N.J. 1998), *aff'd*, 159 F3d. 1351 (3d Cir. 1998). *See also GoPets Ltd. v. Hise*, 657 F.3d 1024, 1035 (9th Cir. 2011); *HQM, Ltd. v. Hatfield*, 71 F. Supp. 2d 500, 507 (D. Md. 1999).  As such, this allegation fails to state claims for trademark infringement, false suggestion of a connection or trademark dilution against the Past Domains.

Plaintiffs' other allegations concerning the Past Domains merely track the statutory language of Section 43(d), and provide no specific underlying facts to plausibly allege NVS used the domains in commerce.  *Compare* Compl. ¶ 64 ("On information and belief, NVSC used the Past Infringing Domain Names with a bad faith intent to profit") and ¶ 69 ("NVSC registered, trafficked in, or used the . . . Past Infringing Domain Names with a bad faith intent to profit from Plaintiffs' Trademarks") with 15 U.S.C. § 1125(d)(1)(A)(i) (citing "bad faith intent to profit from that mark" as element of cyberpiracy claim); ¶ 74 ("NVSC registered, trafficked in, or used the . .

. Past Infringing Domain Names to divert consumers to associated websites for NVSC's commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the associated websites") and ¶ 85 ("NVSC . . . used Plaintiffs' Trademarks in the Past Infringing Domain Names to divert Internet users to NVSC's revenue-generating associated websites and in connection with the advertised sale of the . . . Past Infringing Domain Names") with 15 U.S.C. § 1125(d)(1)(B)(i)(V) "the person's intent to divert consumers . . . to a site accessible under the domain name . . . for commercial gain or . . . by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site"); ¶ 75 ("NVSC offered to transfer, sell, or otherwise assign the . . . Past Infringing Domain Names for financial gain without having used, or having an intent to use, the . . . Past Infringing Domain Names in the bona fide offering of any goods or services") with 15 U.S.C. § 1125(d)(1)(B)(i)(VI) ("the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services").  Such a formulaic recitation of the text of the Lanham Act does not pass muster under *Iqbal* and *Twombly*.  *See Mann v. Brenner*, 375 F. App'x 232, 238-39 (3d Cir. 2010) (dismissing claim where allegations "amount to nothing more than a formulaic recitation of the elements").

### 2. **Plaintiffs Have Failed to Plausibly Allege NVS Registered the Past Domains in Bad Faith**

Plaintiffs' cyberpiracy claims against the Past Domains under Section 43(d) fail to state a claim for the same reason.  Although Section 43(d) does not require Plaintiffs allege use in commerce, Plaintiffs' failure to provide specific factual allegations concerning NVS's alleged use of the Past Domains and Plaintiffs' mere recitation of the statutory language of Section 43(d) do not plausibly show bad faith to profit from Plaintiffs' marks, a required element for a claim of

cyberpiracy against the Past Domains. *See id*. *Cf. Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 346 (E.D.N.Y. 2014) (allegations that merely track confusion factors are "are at best 'naked assertion[s] devoid of factual enhancement'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

C.  **The Court Should Dismiss Plaintiffs' Non-Cyberpiracy Claims Against All the Disputed Domains**

1.  **Plaintiffs Have Failed to Plausibly Allege There Has Been Any Opportunity for Likely Confusion or Dilution**

Claims for trademark infringement and false designation of origin under Sections 32(1) and 43(a) require Plaintiffs to plausibly allege that consumers are likely to be confused by NVS's alleged use of the Disputed Domains. *See* 15 U.S.C. §§ 1114(1), 1125(a). Similarly, claims for trademark dilution under Section 43(c) require Plaintiffs to allege facts that plausibly show NVS's actions will likely result in "an association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark [or] that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(B), (C). Each claim inherently requires that consumers are or likely will be exposed to the challenged designation in some manner. Without consumer exposure, there can be no potential confusion or dilution. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 833-34 (9th Cir. 2011) ("Until a domain name is associated with a server that hosts a website, it's not visible to consumers and thus can't possibly confuse them"); McCarthy § 25A:48 (cybersquatter's mere registration of domain cannot be dilutive since mark is not displayed before the public and thus cannot blur any distinctive quality of plaintiff's mark); *GMC v. Keystone Auto. Indus.*, 453 F.3d 351, 359 (6th Cir. 2006) ("If the placeholder cannot be seen after the Chevrolet 'bow tie' or 'GMC' emblem is affixed, the wholly hidden placeholder cannot cause downstream confusion as to origin or sponsorship. After all, that which defies perception cannot confuse").

19

Because, as discussed above, the complaint lacks any plausible allegations concerning *how* the Past Domains were used at all, let alone that they were visible to the public, the Court should dismiss Plaintiffs' Section 32(1), 43(a) and 43(c) claims against the Past Domains.  Moreover, the Court should dismiss the same claims against *all* the Disputed Domains as there are no plausible allegations that any consumer was or had the opportunity to be exposed to the domains in any manner.  Plaintiffs' allegations at best show that Plaintiffs and their counsel were exposed to any landing pages for the Disputed Domains.  But Plaintiffs and their attorneys' own interactions could not have resulted in likely confusion or dilution of Plaintiffs' marks.  *See Millennium Enters v. Millennium Music*, 33 F. Supp. 2d 907, 911 (D. Ore. 1999).

Moreover, as Plaintiffs know or should be aware, the screenshots of the landing webpages attached to Plaintiffs' complaint are "'dynamic'— meaning a . . . page does not exist unless and until an Internet user types a domain name into a web browser and presses enter."  *Academy of Motion Picture Arts & Sciences v. GoDaddy.com, Inc.,* 2015 U.S. Dist. LEXIS 120871, at *9 (C.D. Cal Sep. 10, 2015).  Further, a dynamic page is created in response to various inputs by the user and may not appear the same for all users.  *See Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147, 1160 (C.D. Cal. 2018).  Plaintiffs fail to make any allegations that any consumer typed in any of the Disputed Domains into a web browser or went to any resolving website, let alone the ones whose screenshots are attached to Plaintiffs' complaint.  Plaintiffs thus have not plausibly alleged that any consumer is likely to be confused or that Plaintiffs' marks will be blurred or tarnished in the marketplace.

### 2.   Plaintiffs Have Failed to Plausibly Allege a Claim for Dilution

#### a.   Plaintiffs Have Failed to Sufficiently Allege Their Marks Are Famous

In order to plead trademark dilution under Section 43(c), Plaintiffs first must plausibly

allege that their marks are famous.  See 15 U.S.C. § 1125(c)(1).  The threshold requirement of fame is a demanding one; requiring specific allegations *showing* that a mark "is widely recognized by the general consuming public of the United States." *Id*. §1125(c)(2)(A).  Plaintiffs thus must allege specific facts concerning the statutory factors used in determining fame: "(i) the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) the amount, volume, and geographic extent of sales of goods or services offered under the mark; and (iii) the extent of actual recognition of the mark." *Id*.  While a plaintiff need not prove in its pleadings that its mark is famous, nonetheless it must "plead enough facts to show that its dilution claim is facially plausible."  *Heller Inc. v. Design Within Reach, Inc.*, 2009 U.S. Dist. LEXIS 71991, at *7 (S.D.N.Y. Aug. 14, 2009).

Plaintiffs plead no such facts, instead nakedly asserting that due to Plaintiffs' "substantial investment of time, effort, and expense in promotion of the Facebook and Instagram Trademarks," the marks are famous "as they are recognized within the United States and around the world as signifying high quality, authentic goods and services provided by [Plaintiffs]."  Compl. ¶¶ 23, 27.  Plaintiffs further allege "[t]he Facebook Trademarks and Instagram Trademarks are famous . . . based on, among other things, the inherent distinctiveness and federal registration of each of the Facebook Trademarks and Instagram Trademarks as well as the extensive and exclusive worldwide use, advertising, promotion, and recognition of them."  *Id.* ¶ 98.  These conclusory assertions, the sum total of Plaintiffs' allegations of fame, fall far short of the requirements of § 1125(C)(2)(A).  Completely missing are any specific factual allegations that go to the statutory fame factors, such as sales numbers, geographic reach, unsolicited media references, surveys or any description of advertising, marketing and promotional efforts.  Plaintiffs cannot simply presume the Court will deem their marks are famous; it is their burden to allege enough facts to

21

show their marks are famous within the meaning of the statute. *See Godigital Media Grp. v. Godigital, Inc.*, 2018 U.S. Dist. LEXIS 237258, at *9 (C.D. Cal. Mar. 9, 2018). Even widely known brands such as COACH have been found to have failed to provide evidence supporting "the stringent requirement for dilution fame," demonstrating that no matter how famous a party believes its brand to be, it is not immune from pleading and proving the requirements of fame for dilution. *Coach Servs. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012).

Because Plaintiffs do not plead any specific facts in support of the fame of their marks, their dilution claim must be dismissed. *See Dentsply Sirona Inc. v. Net32, Inc.*, 2020 U.S. Dist. LEXIS 37100, at *18-19 (M.D. Pa. Mar. 4, 2020) ("conclusory statement that the mark is famous"); *Heller,* 2009 U.S. Dist. LEXIS 71991, at *10 ("plaintiff does not include any information about the [] advertising budget or the strength of its consumer recognition"); *Bentley v. NBC Universal, LLC*, 2016 U.S. Dist. LEXIS 191368, at *10 (C.D. Cal. Sep. 28, 2016) (plaintiff "did not allege any supplemental facts regarding the extent of their marks' advertising, publicity or sales"); *Holding Co. of the Vills. v. Little John's Movers & Storage, Inc.*, 2017 U.S. Dist. LEXIS 202882, at *13 (M.D. Fla. Dec. 11, 2017) (threadbare allegations that plaintiff has spent "significant sums" to promote the marks and achieved "significant commercial success" fail to allege fame).

### b. Plaintiffs Have Failed to Sufficiently Allege Likely Dilution

The Court should dismiss Plaintiffs' dilution claims against all the Disputed Domains for the additional reason that Plaintiffs have failed to plausibly allege that NVS's actions are likely to dilute Plaintiffs' marks. Dilution is "an association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark [or] that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(B), (C). Plaintiffs have failed to

allege any specific facts concerning their claims of dilution.  Plaintiffs merely make the conclusory

allegation that NVS's "use of the Facebook Trademarks and Instagram Trademarks, and variations

thereof, in commerce is likely to cause dilution by blurring or dilution by tarnishment of these

trademarks."  Compl. ¶ 99.  Such conclusory allegations do not show dilution is likely.  *See Arrow*

*Prods. v. Weinstein Co. LLC*, 44 F. Supp. 3d 359, 374 (S.D.N.Y. 2014); *Klein Elecs., Inc. v.*

*Boxwave Corp.*, 2011 U.S. Dist. LEXIS 69525, at *7 (S.D. Cal. June 27, 2011).

## VI.   CONCLUSION

For the above reasons, NVS respectfully requests that this Honorable Court grant its

Motion to Dismiss Plaintiffs' Complaint in Part.

Respectfully submitted,

COWAN, LIEBOWITZ & LATMAN, P.C
By:   ___s/ Eric J. Shimanoff___
Eric J. Shimanoff (admitted *pro hac vice*)
Jeremy A. Berman (admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036
(212) 790-9226

MARSHALL DENNEHEY
WARNER COLEMAN & GOGGIN
Mark J. Kozlowski, Esquire
Attorney I.D. No: PA 308676
P.O. Box 3118
Scranton, PA 18505-3118
(570) 496-4600

*Counsel for Defendant New Ventures*
*Services Corp.*

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| FACEBOOK, INC.; INSTAGRAM, LLC; and WHATSAPP, LLC, | CIVIL ACTION – LAW JURY TRIAL DEMANDED |
| *Plaintiffs*, | HON. MALACHY E. MANNION (electronically filed) |
| v. | NO: 3:21-CV-00697 |
| NEW VENTURES SERVICES CORP., and DOES 1-10, | |
| *Defendants*. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## WORD COUNT CERTIFICATE

I hereby certify that the foregoing brief is no more than 7,500 words, including footnotes, but excluding the cover page, table of contents, table of authorities, signature block and certificates, in line with NVS's MOTION TO EXCEED WORD COUNT LIMIT filed July 20, 2021 (Dkt.#24), which motion is submitted but pending decision.   Total word count, including footnotes, but excluding the cover page, table of contents, table of authorities, signature block and certificates, according to Microsoft Word is 7,457.

COWAN, LIEBOWITZ & LATMAN, P.C
By: ____ s/ Eric J. Shimanoff ____
Eric J. Shimanoff (admitted *pro hac vice*)
Jeremy A. Berman (admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036
(212) 790-9226

MARSHALL DENNEHEY
WARNER COLEMAN & GOGGIN
Mark J. Kozlowski, Esquire
Attorney I.D. No: PA 308676
P.O. Box 3118
Scranton, PA 18505-3118

(570) 496-4600

*Counsel for Defendant New Ventures
Services Corp.*

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

FACEBOOK, INC.; INSTAGRAM, LLC; and
WHATSAPP, LLC,

CIVIL ACTION – LAW
JURY TRIAL DEMANDED

*Plaintiffs*,

HON. MALACHY E. MANNION
(electronically filed)

v.

NO: 3:21-CV-00697

NEW VENTURES SERVICES CORP., and
DOES 1-10,

*Defendants*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## <u>CERTIFICATE OF SERVICE</u>

I, Eric J. Shimanoff, Esquire, do hereby certify that a true and correct copy of the foregoing

brief was served upon Plaintiffs' counsel of record listed below via CM/ECF filing on the 26th day

of July, 2021:

Barry L. Cohen
Royer Cooper Cohen Braunfeld LLC
101 West Elm Street, Suite 400
Conshohocken, PA 19428

William C. Rava
Fabricio Vayra
Jacob P. Dini
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101

COWAN, LIEBOWITZ & LATMAN, P.C
By: ___ s/ Eric J. Shimanoff ___
Eric J. Shimanoff (admitted *pro hac vice*)
Jeremy A. Berman (admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036
(212) 790-9226

MARSHALL DENNEHEY

WARNER COLEMAN & GOGGIN
Mark J. Kozlowski, Esquire
Attorney I.D. No: PA 308676
P.O. Box 3118
Scranton, PA 18505-3118
(570) 496-4600

*Counsel for Defendant New Ventures*
*Services Corp.*