**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **META PLATFORMS, INC.,** *et al.*, | : | |
| **Plaintiffs,** | : | **CIVIL ACTION NO. 3:21-697** |
| **v.** | : | **(JUDGE MANNION)** |
| **NEW VENTURES SERVICES CORP.,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM

Presently before the court is the defendants' motion to dismiss the plaintiffs' amended complaint and for a more definite statement. (Doc. 103). Plaintiffs Meta Platforms, Inc., Instagram, LLC, and WhatsApp, LLC, bring this lawsuit against several domain name registrars and registrants for cybersquatting and other misconduct relating to numerous domain names that are evidently similar to Plaintiffs' trademarks. For example, compare "facebook.com," one of Plaintiffs' trademarks, with "facceboook.com," one of the alleged Infringing Domain Names. Defendants seek dismissal of most of Plaintiffs' claims for failure to state a claim. All but one of those claims (Count V – Promissory Estoppel) include sufficient allegations to state a plausible claim for relief. So the court will **GRANT in part and DENY in part** Defendants' motion to dismiss as explained below.

## I.   <u>BACKGROUND</u>

The factual background of this case is taken from the factual allegations set forth in Plaintiffs' First Amended Complaint (Doc. 61), which the court must accept as true for purposes of Defendants' motion to dismiss.

### A.   Plaintiffs' trademark infringement allegations

Plaintiffs allege that Defendants New Venture Services, Corp. (NVSC), Web.com Group, Inc., and Perfect Privacy LLC (the "Registrant Defendants") registered at least 375 Infringing Domain Names. (*See* Doc. 61-1, list of Infringing Domain Names). As Plaintiffs explain in their amended complaint, a domain name "registrant" is the person or entity that owns a particular domain name. (Doc. 61 at 5). The registrant is listed in the WHOIS record in the registrant or registrant organization field. WHOIS records provide identifying and contact information for the registrant of record.

NVSC registered at least 279 Infringing Domain Names, including instagram-login.com, hackearwhatsapp.com, and faceebbok.com. Perfect Privacy registered at least 93 Infringing Domain Names, including facceboook.com, instatagram.com, and whatsapp-video.com. Web.com registered at least three Infringing Domain Names, including freefacebooktrafficstrategies.com, instagramhaktips.com, and w-hatsapp-it.com. For each Infringing Domain Name registered by a Registrant

Defendant, the Registrant Defendant is or was listed as the registrant in the WHOIS record.

Defendants allegedly trafficked in the Infringing Domain Names by selling and offering to sell many of them via online marketplaces for fees significantly greater than standard domain name registration fees. Defendant Network Solutions, LLC, participates in this trafficking by facilitating and receiving payments for the resale of Infringing Domain Names, including providing customer support services. Defendants also work in concert to transfer Infringing Domain Names between each other. Perfect Privacy, a proxy service provider, registers and traffics in Infringing Domain Names by registering them and licensing their use to its customers (the "Licensees"), including other Defendants.

Defendants also used the Infringing Domain Names in commerce by using them to host revenue-generating advertising webpages known as "parking pages." For example, NVSC hosted a revenue-generating parking page on whatsappid.com that included the Infringing Domain Name in the website header and used the WhatsApp Trademarks and other well-known brands (*e.g.*, Nokia, iPhone, and Windows) in commercial links. The commercial links directly targeted the goods and services offered by Plaintiffs and others, like "iPhone Text App," "Free Text Messaging," and

"Best Messaging Applications." Perfect Privacy used Infringing Domain Names to host revenue-generating parking pages, including facebooklivedeals.com, instagrammed.com, and mywatsapp.com—all with similarly confusing commercial links like "login," "Mobile Photo Sharing," and "Text Messaging Platforms." Another Perfect Privacy-registered Infringing Domain Name, webapp-facebook.com, hosted a website that mimicked the genuine Facebook website, including stylized versions of Plaintiffs' Trademarks, to trick visitors into entering their Facebook login credentials. To facilitate this infringement, Defendants' Register.com, Network Solutions, and SnapNames (the "Registrar Defendants") registration agreements contain terms that empower them with rights beyond those necessary to provide registrar services, including the right to use non-resolving and expired domain names to host parking pages.

Each of the Registrar Defendants is an ICANN-accredited registrar, subject to ICANN's Registrar Accreditation Agreement ("RAA"), which requires that every domain name registration agreement between a registrar and registrant contain certain terms and conditions. One required term, RAA §3.7.7.3, provides that a Registered Name Holder (or registrant) licensing use of a Registered Name (or domain name) shall accept liability for harm caused by the wrongful use of the Registered Name, unless the Registered

Name Holder discloses the identity and contact information of the domain name Licensee within seven days to a party providing reasonable evidence of actionable harm caused by the domain name. RAA §3.7.7.3 is incorporated into Section 4 of Web.com's Domain Name Registration Services agreement ("DNRSA"), which is alleged to apply to all domain name registrations through Register.com or Network Solutions. Every time Perfect Privacy registered a domain name for a Licensee, Perfect Privacy entered the DNRSA and agreed to accept liability for harm pursuant to §3.7.7.3. Between May 2019 and July 2022, Plaintiffs' authorized representatives provided Perfect Privacy reasonable evidence of actionable harm caused by at least 72 Infringing Domain Names. Perfect Privacy failed to timely disclose the identity and contact information of its Licensees and therefore allegedly accepted liability for the harm.

### B.    Plaintiffs' alter ego allegations

Plaintiffs allege NVSC, Register.com, Network Solutions, SnapNames, and Perfect Privacy are part of an interconnected group of related companies and wholly owned subsidiaries, ultimately owned, controlled, and directed by Web.com. This group operates as a single entity, controlled by the same directors, officers, and members, all for the benefit of Web.com. Web.com, Register.com, Network Solutions, SnapNames, and Perfect Privacy exercise

- 5 -

control over NVSC through identical ownership and management. The common directors, officers, and managers do not operate the Defendants as separate entities, but instead operate the entities as a single, integrated entity under a unified management system. In doing so, Defendants do not recognize NVSC as a separate entity, but comingle its assets with the assets of the other Defendants. For example, when someone purchases an Infringing Domain Name from NVSC, the purchaser pays Network Solutions instead of NVSC. When NVSC registers or sells domain names through a Registrar Defendant, Defendants do not engage in arm's length transactions and disregard legal formalities regarding contracts between each other.

Defendants also fail to observe corporate formalities and separateness between each other by presenting themselves to the public as a single, integrated entity. For example, Web.com was able to send emails on behalf of NVSC's domain name, newvcorp.com. Further, NVSC does not have any of its own employees; instead, all work performed for NVSC is performed by employees of other Defendants. NVSC also sells domain names through Network Solutions, including by improperly offering to sell domain names in WHOIS records and "for sale" links that instruct potential customers to purchase NVSC-owned domain names through Network Solutions. When a person inquires about purchasing domain names from NVSC, they receive

a response from Network Solutions customer support. Defendants also combine their abuse reporting function. If someone reports domain name abuse to any Defendant, they are redirected to Web.com's abuse reporting website. Moreover, Perfect Privacy does not maintain its own website but uses perfectprivacy.com to redirect traffic to a Network Solutions website. Defendants also structure themselves in a manner such that whenever a customer does business with any of them, the customer does business with Web.com and all Web.com affiliates. In reality, any time a customer enters into an agreement with any of the Defendants, they effectively enter an agreement with Web.com.

## C.    Plaintiffs' promissory estoppel allegations

Finally, Plaintiffs allege that after filing their original complaint (Doc. 1) they contacted the registrars for the original Infringing Domain Names, including the Registrar Defendants, and requested that they "not remove from registration, transfer, suspend, or otherwise modify the domain names listed in the complaint during the pendency of the case." Web.com sent a collective response confirming NVSC had requested that the Infringing Domain Names be placed on "hold" so they could not be transferred or deleted, and that each registrar had implemented this hold. Defendants reasonably expected this promise would induce Plaintiffs to believe the

domain names were on hold so that Plaintiffs believed they did not need to monitor the domain names or seek an order to deposit the domain names with the court. Plaintiffs reasonably relied on Defendants' promises and did not expend additional time and resources monitoring these domain names. Defendants nevertheless transferred, sold, released, or otherwise permitted at least 69 of these domain names to leave their control, some of which are now registered to third parties.

## II.   LEGAL STANDARD

Defendants' motion to dismiss is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the complaint fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). Dismissal is appropriate only if, accepting all the facts alleged in the complaint as true, the non-moving party has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level."

*Twombly*, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the non-moving party's cause of action. *Id.* Furthermore, to satisfy federal pleading requirements, the non-moving party must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544 at 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to

dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250,1261 (3d Cir. 1994).

The court should generally grant leave to amend a pleading before dismissing it as merely deficient. *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III.   DISCUSSION

Plaintiffs' amended complaint asserts six counts against Defendants: (1) cyberpiracy under the Anticybersquatting Consumer Protection Act (ACPA); (2) trademark infringement under the Lanham Act; (3) false designation of origin under the Lanham Act; (4) trademark dilution under the Lanham Act; (5) promissory estoppel; and (6) trademark infringement under Pennsylvania law.  In a motion exhaustively briefed by the parties (totaling well over 200 pages of briefing and nearly 2000 pages of exhibits), Defendants seek complete dismissal of all but Plaintiffs' ACPA claim for failure to state a claim upon which relief can be granted. For the ACPA claim,

Defendants seek dismissal in part as explained below. Defendants' arguments for dismissal are addressed below in turn.

### A.     Statute of limitations and laches

Defendants ask the court to dismiss Plaintiffs' trademark claims relating to certain Infringing Domain Names that operated outside the applicable statute of limitations. Specifically, Defendants argue some of Plaintiffs' trademark claims concern domains that left any Defendant's possession outside the applicable statutory limitations period. They argue the claims should also be dismissed under the doctrine of laches. Plaintiffs argue neither the statute of limitations nor laches defenses are "clearly apparent" on the face of their amended complaint as required for dismissal at this stage and that laches is a fact-intensive defense that cannot be resolved on the pleadings. The court agrees.

"A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017); *see also Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) ("If the [time] bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)."). The Lanham Act does not contain a statute of limitations within its text, so courts

typically look to analogous state law claims and pull their statutes of limitations or to the federal four-year catch-all statute in 28 U.S.C. §1658. Acknowledging this, Defendants urge the court to enforce a two-, four-, or six-year statute of limitations depending on the claim. Regardless of the applicable statute of limitations, "Pennsylvania tolling principles would also be applicable in determining whether this suit is time-barred." *Beauty Time, Inc. v. VU Skin Sys., Inc.*, 118 F.3d 140, 143 (3d Cir. 1997). "It is well-established that Pennsylvania law recognizes an exception to the statute of limitations which 'delays the running of the statute until the plaintiff knew, or through the exercise of reasonable diligence should have known, of the injury and its cause.'" *Id.* at 144 (quoting *Urland v. Merrell–Dow Pharmaceuticals*, 822 F.2d 1268, 1271 (3d Cir. 1987)). This exception is known as the discovery rule.

Defendants do not argue Plaintiffs actually knew of the injury and its cause alleged in their trademark claims outside of the applicable statute. Rather, they say Plaintiffs should have known. Whether Plaintiffs should have known is a fact-intensive inquiry ill-suited for a 12(b)(6) motion and not apparent on the face of Plaintiffs' amended complaint. As the Pennsylvania Supreme Court explained:

> [W]hen a court is presented with the assertion of the discovery rule's application, it must address the ability of the damaged

party, exercising reasonable diligence, to ascertain that he has been injured and by what cause. Since this question involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause, ordinarily, a jury is to decide it.

*Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005). Defendants have not shown that it is apparent on the face of the amended complaint exactly when Plaintiffs should have known, through the exercise of reasonable diligence, of their alleged injury and its cause. This precludes a dismissal on statute of limitations grounds at this stage.

Defendants rely on several exhibits attached to their motion to dismiss to try to demonstrate when Plaintiffs, as sophisticated parties, should have known of their injury and its cause. First, Defendants attach an excerpt from one of Plaintiffs' webpages containing a statement that Plaintiffs "scan the Internet" for confusingly similar domains on a regular basis. But this does not demonstrate when Plaintiffs should have known of their injury and its cause because the precise nature of this "scanning" is unclear and disputed on this record. Second, Defendants point to "at least half a dozen domain name litigations and nearly 200 domain name dispute arbitration proceedings over the past decade" maintained by Plaintiffs. But this does not demonstrate when Plaintiffs should have known of their injury and its cause because it does not necessarily follow that Plaintiffs should have been aware of the

specific infringing domains at issue in this case. Third, Defendants attach historical WHOIS data purporting to show certain domains left Defendants' control outside the statute of limitations period. But, assuming these records do show certain domains left Defendants' control on the asserted dates, this does not demonstrate the statute of limitations should have necessarily, as a matter of law, been triggered on those dates.

In sum, even if the court were to consider the additional exhibits provided by Defendants, that information does not definitively answer, as a matter of law, when Plaintiffs should have known of their alleged injury and its cause. This precludes dismissal on statute of limitations grounds.

Defendants' laches argument fails at this stage for similar reasons. "Laches consists of two elements: (1) inexcusable delay in bringing suit, and (2) prejudice to the defendant as a result of the delay." *Santana Prod., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 138 (3d Cir. 2005) (citation omitted). First, laches is a fact-intensive inquiry ill-suited for a motion to dismiss. Second, Defendants' laches argument hinges on a presumption of laches that arises in cases where the statute of limitations has expired. *See id.* at 138–39. Defendants have not demonstrated that the state of limitations has expired for Plaintiffs' claims. Thus, the court will not dismiss Plaintiffs' trademark claims as time-barred at this stage.

## B.   Substantive allegations in Plaintiffs' trademark claims

Next, Defendants seek dismissal of Plaintiffs' non-ACPA trademark claims for failure to plausibly allege Defendants used the domain names in connection with goods and services or that the domain names were likely to cause confusion or dilution. Defendants specifically seek dismissal of claims involving at least 163 of the Infringing Domain Names which either did not resolve to any website or resolved to a website that was without any substantive content (the "Non-Used Domains"). Plaintiffs argue their allegations that Defendants used all allegedly infringing domains in a similar manner are sufficient to survive a motion to dismiss. The court agrees.

In order to state a valid federal trademark infringement or false designation of origin claim, "Plaintiff[s] must plead sufficient facts to suggest: (1) ownership of a valid and legally protectable mark; (2) that defendant[s] used the mark in commerce; (3) in connection with the sale, preparing for sale, distribution or advertising of goods and services; (4) in a manner likely to confuse customers. *Fagnelli Plumbing Co. v. Gillece Plumbing & Heating, Inc.*, No. 2:10-CV-00679-AJS, 2010 WL 2994163, at \*5 (W.D. Pa. July 27, 2010) (internal quotation marks and citations omitted); *see also A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). The elements are nearly identical under Pennsylvania law. *See*

*Gideons Int'l, Inc. v. Gideon 300 Ministries, Inc.*, 94 F.Supp.2d 566, 580 (E.D. Pa. 1999).

Here, Plaintiffs allege Defendants "monetize the Infringing Domain Names by operating revenue-generating advertising on websites hosted on the Infringing Domain Names." (Doc. 61 at 19). The amended complaint goes on to list several examples. To name one, Plaintiffs allege NVSC hosted a revenue-generating parking page on whatsappid.com. A screenshot of that page shows several commercial links which "correspond to words and phrases directly targeting the goods and services offered by Plaintiffs and others like 'iPhone Text App, 'Free Text Messaging,' and 'Best Messaging Applications.'" (Doc. 61 at 19–20).

Defendants take issue with the alleged Non-Used Domains—*i.e.*, the domain names which, Defendant aver, do not resolve to these revenue-generating parking pages. Defendants argue the Non-Used Domains were not "used" in connection with goods and services, nor could they cause a likelihood of confusion or dilution. *See GoPets Ltd. v. Hise*, 657 F.3d 1024, 1035 (9th Cir. 2011) ("Registration of a domain name without more does not constitute service mark or trademark infringement"); *Ford Motor Co. v. Great Domains.com, Inc.*, 177 F. Supp. 2d 635, 648 (E.D. Mich. 2001) ("mere

registration is insufficient to support a claim of trademark dilution, just as it is inadequate to show infringement").

Defendants' argument hinges on exhibits attached to Plaintiffs' amended complaint. (*See* Doc. 61-9). Plaintiffs attached screenshots of the landing pages for the Infringing Domain Names, some of which, as Defendants argue, appear to either not have any substantive content or not resolve to a webpage at all. According to Defendants, this flatly contradicts Plaintiffs' allegation in the amended complaint that Defendants used all of the Infringing Domain Names in a similar manner (*i.e.*, with revenue-generating parking pages). Defendants are correct that when "[a plaintiff's] own exhibits contradict her allegations in the complaint, the exhibits control." *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018). But the court disagrees that Plaintiffs' exhibits contradict the allegations in their complaint.

To illustrate, Plaintiffs attach a screenshot of the webpage for Infringing Domain Name "affilofacebook.com." (Doc. 61-9 at 4). The screenshot is dated December 14, 2014. The domain name does not resolve to a webpage, but instead contains text stating the domain name is no longer available. This does not necessarily contradict Plaintiffs' allegation that Defendants used all Infringing Domain Names in a similar manner. At most,

the screenshot demonstrates Defendants did not host a parking page for that domain name on that particular date. The court cannot go a step further at the pleadings stage and find, as a matter of law, Defendants did not use this or the other Non-Used Domains to host revenue-generating parking pages at all relevant times. Thus, the court will deny Defendants motion to dismiss the non-ACPA trademark claims involving the Non-Used Domains on this ground.

### C.    Trademark claims against Perfect Privacy

Next, Defendants proffer several grounds on which they claim the court should dismiss Plaintiffs' trademark claims against Defendant Perfect Privacy. Plaintiffs aver Defendants' arguments primarily consist of factual quarrels with Plaintiffs' allegations, not challenges to the sufficiency thereof if accepted as true. The court agrees.

First, Plaintiffs plausibly allege Perfect Privacy is a proxy service that registered at least 93 Infringing Domain Names and licensed use of those domain names to licensees. Defendants do not dispute that Perfect Privacy is listed in the WHOIS database as the name and contact associated with the relevant domains. (*See* Doc. 106 at 47). And according to the RAA specifications attached to the motion to dismiss, the fact that Perfect Privacy's contact information is displayed in the WHOIS database plausibly

suggests Perfect Privacy is the registrant of those domains. (See Doc. 106-7).

Defendants aver that "[t]he website and agreements referenced in and/or attached to the FAC make clear that Perfect Privacy is a 'privacy' service offered to customers who are and always remain the registrants of the domains and that Perfect Privacy merely masks the customer's identity and contact information in the public WHOIS database with Perfect Privacy's own name and contact information." (Doc. 106 at 47–48). But looking at the website cited by Defendants (Doc. 106-10), it is not clear which way the information cuts. There is language on the webpage suggesting Perfect Privacy is a privacy service, as Defendants urge, yet the website also refers to Perfect Privacy as a "proxy service," as Plaintiffs allege. (*See* 106-10 at 2) ("Unlike *other proxy services*, we own the patent for Private Registration.") (emphasis added). At most, Defendants' evidence attached to their motion raises a factual dispute as to the precise nature of Perfect Privacy and its offered services.

Second, Plaintiffs plausibly allege they are third party beneficiaries of the Domain Name Registration Services Agreement (DNRSA), which they plausibly allege makes Perfect Privacy liable for bad acts of its domain name licensees. Specifically, Plaintiffs allege Perfect Privacy entered into the

DNRSA and "agreed to accept liability for harm caused by the wrongful use of a domain name by its licensees unless it disclosed the identity and contact information of its licensee within seven days to a party providing reasonable evidence of actionable harm." (Doc. 61 at 34). This language comes from §3.7.7.3 of the RAA, which Plaintiffs allege is incorporated into Section 4 of the DNRSA. Defendants argue Plaintiffs are not parties to the DNRSA, nor are they third-party beneficiaries, so they cannot enforce the agreement. Plaintiffs argue they are third-party beneficiaries of the DNRSA and cite cases permitting similar allegations to survive motions to dismiss. But those cases do not address the situation presented here, in which the registration agreement itself contains a "No Third-Party Beneficiaries" clause.

The no third-party beneficiaries clause provides, in relevant part, "Except as otherwise expressly provided for herein or the Agreement," nothing in the DNRSA is intended to confer any benefits to third parties. (Doc. 61-13 at 8). Drawing all inferences in favor of Plaintiffs, the court cannot decide on this record whether the language of §3.7.7.3 of the RAA, as incorporated into the DNRSA (which courts have found could confer benefits on parties like the Plaintiffs here[1]) was intended by the parties to the DNRSA

---

[1] *See, e.g., Facebook Inc. v. Namecheap Inc.*, No. CV-20-00470-PHX-GMS, 2020 WL 6585534, at *4 (D. Ariz. Nov. 10, 2020); *Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1119 (C.D. Cal. 2009).

to be barred by the No Third-Party Beneficiaries clause, or whether the §3.7.7.3 language was intended to fall into the "[e]xcept as expressly provided for herein" exception in that clause. Like here, third party beneficiary claims involve factual questions of intent ill-suited for resolution at the 12(b)(6) stage. *See Dunkin' Donuts Franchised Restaurants, LLC v. Claudia I, LLC*, No. CIV.A. 12-2010, 2013 WL 3716525, at *5 (E.D. Pa. July 15, 2013) (citation omitted).

Finally, Defendants argue the court should dismiss the claims against Perfect Privacy because Plaintiffs allege they provided notice of "reasonable evidence of actional harm" in accordance with §3.7.7.3 for only some, not all, of the domain names registered to Perfect Privacy. However, Plaintiffs allege their "authorized representatives sent notices to Perfect Privacy with reasonable evidence that *at least* 72 domain names caused Plaintiffs actionable harm." (Doc. 61 at 35) (emphasis added). At most, this allegation sets a lower bound on the notices sent by Plaintiffs. Whether Plaintiffs sent notice that *only* 72 of the Perfect Privacy domains caused them actual harm is a factual issue more properly handled in a motion for summary judgment.

Thus, Defendants' motion to dismiss the claims against Perfect Privacy will be denied.

### D.    Promissory estoppel

Next, Defendants seek dismissal of Plaintiffs promissory estoppel claim. Defendants argue Plaintiffs fail to plausibly plead Defendants made a promise which they should have reasonably expected to induce reliance by Plaintiffs. The court agrees.

To plead promissory estoppel, Pennsylvania law requires allegations that "(1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise. *Edwards v. Wyatt*, 335 F.3d 261, 277 (3d Cir. 2003) (citation omitted).

Here, Plaintiffs allege that "[w]ith the filing of the original complaint, Defendants were put on notice that the 74 Infringing Domain Names were at issue in this lawsuit, and, in response, Defendants promised they would place and maintain during the pendency of this lawsuit a hold on the registrations for those Infringing Domain Names, specifically not allowing the transfer or deletion of those domain name registrations." (Doc. 61 at 54). But this allegation is belied by the email in which Defendants allegedly made this promise. Defendants attach to their motion to dismiss the email sent by Defendant Web.com in response to Plaintiffs' request for a legal hold on the

- 22 -

74 domain names. The same email was also authenticated and attached to an earlier filing by Plaintiffs in this case. (*See* Doc. 63-4). This is an indisputably authentic document that the court may consider in deciding the motion to dismiss. *See Pension Benefit*, 998 F.2d at 1196.

The email shows Defendants did not make any promise to Plaintiffs that they would keep the 74 domain names on legal hold status throughout this case. The email provides, in relevant part:

> The Registrars greatly respect the intellectual property rights of third parties. However, the Registrars do not control the use of the Domains at issue in the Litigation and are not in a position to be the arbiters of trademark or other disputes between third parties.
>
> The Registrars will, of course, comply with any valid court order concerning the disposition of the Domains.
>
> We can, however, confirm that the owner of the Domains has requested the Registrars to place the Domains on 'hold' so that the Domains cannot be transferred or deleted while the hold is in place. Each of the Registrars has implemented this hold.
>
> We advise that you contact the owner of the Domains directly in order to resolve any disputes.

(Doc. 63-4). Under any rational interpretation of this email, Defendant Web.com at most informed Plaintiffs that the registrars received a request to place the domain names on hold, and that they implemented the hold. There is no promise to keep the domain names on hold, and any reliance to that effect on Plaintiffs' part would be objectively unreasonable. Thus, having

failed to plausibly plead the first element of promissory estoppel, the court will dismiss this count.

Plaintiffs suggest in their briefing that this email may not have been the only communication from Defendants regarding a legal hold that Plaintiffs allegedly relied on. (Doc. 143 at 64). Thus, dismissal will be without prejudice since it has not been demonstrated that amendment would be futile.

### E.   Alter ego and direct participant allegations

Next, Defendants argue Plaintiffs have failed to plausibly allege that Defendants are liable for any claim under "alter ego" and "direct participant" theories. Plaintiffs argue they have alleged enough specific facts to plausibly plead these theories and entitle them to discovery thereon. The court agrees.

"[I]n order to succeed on an alter ego theory of liability, plaintiffs must essentially demonstrate that in all aspects of the business, the two corporations actually functioned as a single entity and should be treated as such." *Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 365–66 (3d Cir. 2018) (citation omitted). The Third Circuit employs a totality of the circumstances test to determine alter ego liability and considers the following non-exhaustive list of relevant factors: "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of [subsidiary] corporation, siphoning of funds from the [subsidiary] corporation

- 24 -

by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder." *Id.* at 365. Federal law and Pennsylvania state law alter ego principles are "substantially similar" and the analysis of both "can largely proceed in tandem." *Id.*

"Proving that a corporation is merely an alter ego is a burden that is notoriously difficult for plaintiffs to meet." *Id.* (internal quotation marks omitted). But, at this stage, Plaintiffs need not "prove" alter ego liability. Plaintiffs, instead, must allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the non-moving party's cause of action. *Twombly*, 550 U.S. at 555. Plaintiffs have done so.

As detailed above, Plaintiffs allege NVSC, Register.com, Network Solutions, SnapNames, and Perfect Privacy are part of an interconnected group of related companies and wholly owned subsidiaries, ultimately owned, controlled, and directed by Web.com. This group allegedly operates as a single entity, controlled by the same directors, officers, and members, all for the benefit of Web.com. Plaintiffs support these general allegations with several specific factual allegations. For example, Plaintiffs allege: Defendants do not treat NVSC as a separate entity but use it as a conduit to

comingle assets; Defendants do not engage in arm's length transactions when they sell domains through Registrar Defendants, and disregard legal formalities regarding contracts between each other; Defendants fail to observe corporate formalities by presenting themselves to the public as a single, integrated entity, such as when Web.com sends emails using NVSC's domain name; each Defendant shares identical directors, officers, and/or members; and Defendants combine their abuse reporting function, *e.g.*, if someone reports domain name abuse to any Defendant, they are directed to Web.com's abuse reporting website. The court agrees with Plaintiffs that these allegations, combined with allegations of Defendants' collective cybersquatting scheme to deceive the public and exploit Plaintiffs' trademarks for profit, are sufficient to survive a motion to dismiss. Whether these allegations can be supported by record evidence is a question for a summary judgment motion or a trier of fact.

Defendants point out, correctly, that largely absent from Plaintiffs' alter ego allegations are those going to the categories of financial evidence the Third Circuit considers in assessing alter ego liability, such as gross undercapitalization, nonpayment of dividends, insolvency of debtor corporation, and siphoning of funds from the debtor corporation by the dominant stockholder. But this is not enough for Defendants to meet their

burden of showing Plaintiffs failed to plead alter ego liability, since the relevant factors are non-exhaustive, and Defendants cite no case finding an absence of this "financial evidence" demands dismissal at the 12(b)(6) stage.

Plaintiffs' allegations are also enough to plausibly plead their direct participant theory. "Although not often employed to hold parent corporations liable for the acts of subsidiaries in the absence of other hallmarks of overall integration of the two operations, it has long been acknowledged that parents may be 'directly' liable for their subsidiaries' actions when the 'alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management,' and the parent has interfered with the subsidiary's operations in a way that surpasses the control exercised by a parent as an incident of ownership." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 486–87 (3d Cir. 2001) (quoting *United States v. Bestfoods*, 524 U.S. 51, 64 (1998)). As delineated above, Plaintiffs plausibly allege Defendants, with identical management personnel, operated a coordinated cybersquatting scheme for the benefit of Web.com. This surpasses the control exercised by a parent as an incident of ownership and is sufficient to survive a motion to dismiss.[2]

---

[2] For similar reasons, the court rejects, at this stage, Defendants' arguments for dismissal of Defendant SnapNames Web.com. Plaintiffs have

*(footnote continued on next page)*

## F.    More definite statement

Lastly, Defendants urge the court to dismiss the amended complaint as impermissibly vague or, in the alternative, to order Plaintiffs to file a more definite statement. Defendants argue Plaintiffs "lump[] together multiple Defendants without specifying which specific Defendants were involved in the specific alleged conduct at issue." A review of the complaint reveals it is not impermissibly vague to warrant dismissal. Moreover, the court will not grant the motion for a more definite statement.

> Rule 12(e) of the Federal Rules of Civil Procedure allows a party to move for a more definite statement of a pleading "which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Like Rule 12(b)(6), Rule 12(e) must be read in conjunction with Rule 8, which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8. Even after the Supreme Court's ruling in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), courts have held that "[t]he class of pleadings that are appropriate subjects for a motion under Rule 12(e) is quite small—the pleading must be sufficiently unintelligible for the court to be able to make out one or more potentially viable legal theories on which the claimant might proceed.["] *Lapcevic v. Strive Enterprises, Inc.*, No. 2:09-cv-564, 2010 WL 1816752, at *7 (W.D. Pa. Apr. 8, 2010) (quoting *Sun Co. v. Badger Design & Constructors*, 939 F. Supp. 365, 368 (E.D. Pa. 1996)). Granting a Rule 12(e) motion is appropriate only when the pleading is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to itself." *Sun Co.*, 939 F. Supp. at 368.

alleged sufficient facts that SnapNames Web.com is an alter ego and direct participant in Defendants' alleged unlawful scheme.

*Rabinovich v. Bares*, No. 3:22-cv-00753, 2023 WL 2167393, at *1 (M.D. Pa. Feb. 22, 2023) (quoting *Mushi v. LJ Ross Assocs., Inc.*, No. 3:21-cv-01300, 2021 WL 4803781, at *1 (M.D. Pa. Oct. 14, 2021)). "The basis for granting [a 12(e)] motion is unintelligibility, not lack of detail." *Id.*

Here, Plaintiffs' sixty-page complaint is not "so vague or ambiguous that the opposing party cannot reasonably prepare a response," nor is it unintelligible. While Plaintiffs' complaint contains some general allegations regarding "Defendants," Plaintiffs follow up those allegations with more specific factual allegations going to specific Defendants and specific domain names. The complaint also precisely defines each Defendant and separates Defendants into registrants and registrars. The specific information which Defendants seek can be obtained through discovery. A 12(e) motion is not a substitute for the discovery process, so Defendants' motion will be denied. *See Rabinovich*, 2023 WL 2167393 at *2 (a motion for a more definite statement is not a substitute for the discovery process) (citations omitted).

## IV.   CONCLUSION

In light of the foregoing, the court will **GRANT in part and DENY in part** Defendants' motion to dismiss. (Doc. 103). The court will **GRANT** the motion with respect to Plaintiffs' promissory estoppel claim and dismiss that

claim without prejudice. The court will **DENY** the motion in all other respects.

An appropriate order follows.


                                          *S/ Malachy E. Mannion*
                                          **MALACHY E. MANNION**
                                          **United States District Judge**

**DATE: August 31, 2023**
21-697-01