## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **META PLATFORMS, INC.;** | : | **No. 3:21cv697** |
| **INSTAGRAM, LLC; and** | : | |
| **WHATSAPP LLC,** | : | **(Judge Munley)** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **NEW VENTURES SERVICES, CORP.** | : | |
| **et al.,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM ORDER

In their second amended complaint, plaintiffs Meta Platforms, Inc. (f/k/a Facebook, Inc.) ("Meta"), Instagram, LLC ("Instagram"), and WhatsApp LLC ("WhatsApp") assert that defendants violated the AntiCybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA").[1] (Doc. 201, ¶¶ 147-175).

Defendants opposed plaintiffs' claims and filed an answer asserting several affirmative defenses. (See Doc. 209). Subsequently, plaintiffs moved to strike

---

[1] Defendants New Ventures Services, Corp. ("NVSC"), Web.com Group, Inc. ("Web.com"), Register.com, Inc. ("Register.com"), Network Solutions, LLC ("Network Solutions"), SnapNames Web.com LLC, SnapNames 1, LLC, SnapNames 6, LLC, SnapNames 7, LLC, SnapNames 9, LLC, SnapNames 11, LLC, SnapNames 14, LLC, SnapNames 21, LLC, SnapNames 30, LLC, SnapNames 33, LLC, SnapNames 34, LLC, SnapNames 47, LLC, SnapNames 49, LLC, SnapNames 50, LLC, SnapNames 51, LLC, SnapNames 55, LLC, SnapNames 56, LLC, SnapNames 57, LLC, SnapNames 58, LLC, SnapNames 59, LLC, SnapNames 60, LLC, SnapNames 65, LLC, SnapNames 69, LLC, SnapNames 70, LLC, SnapNames 85, LLC, SnapNames 88, LLC, SnapNames 95, LLC, SnapNames 98, LLC, Perfect Privacy LLC ("Perfect Privacy"), and Does 1-10.

one of those defenses. (<u>See</u> Doc. 210).  For the reasons that follow, plaintiffs'
motion to strike will be denied.

**Background**

At issue are plaintiffs' claims that defendants, acting individually and
through related entities, registered and used hundreds of domain names identical
or confusingly similar to plaintiffs' trademarks in violation of the ACPA.[2]
Specifically, plaintiffs allege that defendants individually and collectively as alter
egos, registered, trafficked in, and used at least 773 domain names identical or
confusingly similar to plaintiffs' trademarks. (Doc. 201, ¶ 2).  According to
plaintiffs, the infringing domain names—such as webapp-facebook.com,
httpinstagram.com, Instagram-login.com, and hackearwhatsapp.com—are
dilutive of the Facebook, Instagram, and WhatsApp trademarks. (<u>Id.</u> ¶¶ 3, 150).

Plaintiffs assert that several defendants who serve as accredited registrars
abused their positions by working with affiliated entities in a coordinated effort to
cybersquat on plaintiffs' trademarks. (<u>Id.</u> ¶ 4).  Plaintiffs further allege that they
provided defendants with takedown notices and abuse reports identifying the
allegedly infringing domain names. (<u>Id.</u> ¶ 13).  Despite receiving those notices,

---

[2] These brief background facts are derived from plaintiffs' second amended complaint. (Doc.
201).

2

defendants allegedly failed to disable many of the infringing domain names and continued to traffic in and use them. [3] (Id.)

In response, defendants asserted, among other defenses, that the doctrine of unclean hands precludes plaintiffs' claims in whole or in part ("Seventh Affirmative Defense"). (Doc. 209 at 34-35). Plaintiffs now move to strike that Seventh Affirmative Defense. (Doc. 210). The parties have filed briefs in support of their positions, bringing the case to its present posture.

**Jurisdiction**

Because plaintiffs assert claims under federal statutes, 28 U.S.C. § 1338(a) and 15 U.S.C. § 1121(a), the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Legal Standard**

Rule 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Rule 12(f) motions are designed to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters. Goode v. LexisNexis Risk & Info. Analytics Grp., Inc., 284 F.R.D. 238, 243 (E.D.

---

[3] Among other allegations, plaintiffs assert that each defendant is the alter ego of the others and that each directly participates in the other's acts of cybersquatting. (Doc. 201, ¶¶ 112-13).

Pa. 2012) (citations omitted); see also McInerney v. Moyer Lumber & Hardware, Inc., 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002).  Providing relief under Rule 12(f) is largely disfavored and such motions are typically denied "unless the material bears no possible relation to the matter at issue and may result in prejudice to the moving party." Miller v. Grp. Voyagers, Inc., 912 F. Supp. 164, 168 (E.D. Pa. 1996).

**Analysis**

Before addressing the grounds for plaintiffs' motion to strike, a review of defendants' Seventh Affirmative Defense is warranted.  Defendants' Seventh Affirmative Defense asserts that:

> Plaintiffs' claims, in whole or part, are barred by the doctrine of unclean hands, including because Plaintiffs engage in much of the same behavior that Plaintiffs allege supports the basis of their theories of liability under the doctrines of alter ego/direct participant—including without limitation, common ownership and officers, joint marketing, and shared management, legal and administrative services—and as a result of such behavior Plaintiffs have been able to obtain, maintain, use, promote, market, advertise and/or enforce their trademarks asserted against Defendants in this action.

(Doc. 209 at 34-35).

4

Plaintiffs move to strike the Seventh Affirmative Defense on three grounds. First, they contend that the defense is factually insufficient. Second, plaintiffs argue that it relies on a purported "inverse defense" theory unsupported by law. Third, they assert that allowing the defense to proceed would result in prejudice. The court finds each argument unpersuasive.

*Factual Sufficiency* – Plaintiffs argue that defendants' Seventh Affirmative Defense is insufficient as a matter of law and should be stricken. (Doc. 210-1, Br. in Supp. at 10-11). Per plaintiffs, defendants have not and cannot prove the elements of the unclean hands doctrine. (Id. at 6-7). Defendants disagree.

The Third Circuit Court of Appeals has "explained that the equitable doctrine of unclean hands applies when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation."[4] Newborn Bros. Co. v. Albion Eng'g Co., No. 24-1548, 2025 WL 3560164, at *4 (3d Cir. Dec. 10, 2025) (quoting Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 174 (3d Cir. 2001)). "[O]ne's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character." Monsanto Co. v. Rohm & Haas Co.,

---

[4] In the Third Circuit, a defendant asserting an unclean hands defense must present "clear, convincing evidence of egregious misconduct" by the plaintiff. Citizens Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City, 383 F.3d 110, 129 (3d Cir. 2004) (cleaned up). This standard generally requires proof of "fraud, unconscionability, or bad faith on the part of the plaintiff." S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 377 n.7 (3d Cir. 1992)).

456 F.2d 592, 598 (3d Cir. 1972).  "Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of [the unclean-hands doctrine.]" Id. "[W]hether [a plaintiff] was acting with unclean hands is a question of fact." Project Dev. Grp., Inc. v. O.H. Materials Corp., 766 F. Supp. 1348, 1355–56 (W.D. Pa. 1991), aff'd, 993 F.2d 225 (3d Cir. 1993).

Here, the parties agree that the plausibility pleading standard articulated in Twombly and Iqbal does not apply to affirmative defenses. (Doc. 210-1, Br. in Supp. at 14) (citing Dann v. Lincoln Nat. Corp., 274 F.R.D. 139, 145 (E.D. Pa. 2011)); (Doc. 213, Br. in Opp. at 2-3) (citing F.T.C. v. Hope Now Modifications, LLC, No. CIV. 09-1204 JBS/JS, 2011 WL 883202, at *3 (D.N.J. Mar. 10, 2011)). That is because, "by stating an affirmative defense under Rule 8(c), a defendant is not making a 'claim for relief' to which Rule 8(a) would apply." F.T.C., 2011 WL 883202, at *3.  Even so, a defendant must plead in its affirmative defense more than "bare bones" allegations that fail to provide the other party with fair notice of the nature of the defense. Dann, 274 F.R.D. at 146.  Accordingly, the "pleading standard for an affirmative defense is less demanding than that of a claim or counterclaim." Allergan USA, Inc. v. Sun Pharm. Indus. Ltd., 636 F. Supp. 3d 483, 489-90 (D. Del. 2022); see also Internet Media Corp. v. Hearst Newspapers,

<u>LLC</u>, No. 10-690-SLR, 2012 WL 3867165, at *3 (D. Del. Sept. 6, 2012) (noting that affirmative defenses "need not be plausible to survive" under Rule 8(c)).

In their Seventh Affirmative Defense, defendants contend that plaintiffs themselves engaged in many of the same acts they attribute to defendants, including common ownership and officers, joint marketing, and shared management, legal and administrative services. (Doc. 213. Br. in Opp. at 5-6). Defendants argue that, under plaintiffs' own theory, these overlapping relationships would likewise support a finding that plaintiffs operate as alter egos of one another. (<u>Id.</u>)

After review of the allegations, the court concludes that defendants have articulated their unclean hands affirmative defense with sufficient specificity to satisfy Rule 8(c) and to survive a motion to strike. See <u>Dann v. Lincoln Nat. Corp.</u>, 274 F.R.D. 139, 146 (E.D. Pa. 2011) ("[A]ffirmative defenses are pleadings, subject to the general pleading requirements of the Federal Rules of Civil Procedure, including the 'short and plain statement' rule.") (citation omitted). The Seventh Affirmative Defense provides plaintiffs with fair notice of the nature of the defense. See <u>Robinson v. Johnson</u>, 313 F.3d 128, 134–35 (3d Cir. 2002) ("The purpose of requiring the defendant to plead available affirmative defenses in his answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense

7

should not succeed."). Furthermore, the Seventh Affirmative Defense adequately asserts a close connection between the misconduct defendants allegedly committed and plaintiffs' claims. In re New Valley Corp., 181 F.3d 517, 525 (3d Cir. 1999) ("When applying the doctrine, the courts in this Circuit have generally been clear that the connection between the misconduct and the claim must be close.").

*Inverse Defense* – Plaintiffs also argue that the Seventh Affirmative Defense rests on a novel "inverse defense" theory. (Doc. 215, Reply. Br. at 9). According to plaintiffs, defendants improperly assert that because plaintiffs allege that defendants engaged in certain conduct, defendants may respond by alleging that plaintiffs engaged in similar conduct. (Id.) Plaintiffs contend that this theory lacks legal support. (Id.)

The United States Supreme Court, however, has recognized that "courts of equity . . . are not bound by formula or restrained by any limitation that tends to trammel the[ir] free and just exercise of discretion" in applying the unclean hands doctrine. Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 245-46 (1933). In any event, a motion to strike is not the proper vehicle for resolving the viability of an unclean hands defense at this stage. "Unclean hands is a fact-specific doctrine that is seldom vulnerable to a motion to strike prior to the

completion of discovery." <u>Reuters Transaction Servs. v. Bloomberg L.P.</u>, 2004 U.S. Dist. LEXIS 27336, at *6 (S.D.N.Y. July 29, 2004).

*Prejudice* – Lastly, plaintiffs contend that permitting defendants' unclean hands defense to proceed would prejudice them by forcing litigation of irrelevant issues and by subjecting plaintiffs to unnecessary and burdensome discovery. (Doc. 210-1, Br. in Supp. at 18-19). Plaintiffs assert that litigating this affirmative defense would require them to respond to discovery requests that defendants purportedly pursue for no legitimate purpose. (<u>Id.</u>) In support, plaintiffs point to defendants' first set of interrogatories and requests for production of documents, both dated September 1, 2023. (<u>See</u> Doc. 210-3, 210-4). However, the discovery requests on which plaintiffs rely predate defendants' assertion of the unclean hands defense by over two years. That chronology undercuts plaintiffs' claim of prejudice. Hence, plaintiffs' motion to strike the Seventh Affirmative Defense will be denied. <u>See</u> <u>Perma-Liner Indus., Inc. v. U.S. Sewer & Drain, Inc.</u>, 630 F. Supp. 2d 516, 526 (E.D. Pa. 2008) (holding that Rule 12(f) motions "are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issue." (cleaned up).

**AND NOW**, to wit, this _23rd_ day of February 2026, it is hereby **ORDERED**

that plaintiffs' motion to strike defendants' Seventh Affirmative Defense, (Doc.

210), is **DENIED.**

_____
JUDGE JULIA K. MUNLEY
United States District Court